United States Court of Appeals,

Fifth Circuit.

No. 96-30095.

WORLD TANKER CARRIERS CORP., Plaintiff-Appellant,

v.

MV YA MAWLAYA, her engines, boilers, tackle, furniture, apparel, etc., in rem, et al., Defendants.

Kara Mara Shipping Company Limited; Holbud Ship Management, Ltd.; Holbud Ltd.; Hydery (P) Ltd., in personam; Vestman Shipping Co., Sperex Shipping Company, Limited; SNP Ship Management and Consultation Bureau of Bombay; SNP Shipping Service Private Limited; Roshanali Merali Roshanali Rajabali Dewji; Hasnain Merali; Shaukat A. Merali, Defendants-Appellees.

CIRPRIANO B., Plaintiff,

v.

NEW WORLD MT, her engines, boilers, tackle, furniture, apparel, etc., in rem, et al., Defendants.

CEREOL ITALIA SRL, Plaintiff-Appellant,

v.

MV YA MAWLAYA, her engines, boilers, tackle, etc., et al., Defendants.

Salome de Guia ENRIQUEZ; Marisusa A. Recana, individually, as widow and administratrix of the succession of Solito S. Recana and as guardian/natural tutrix of the minor children, April A. Recana, Jenny-Lynn A. Recana and Caroline A. Recana; Corazon C. Amulong, individually, as widow and administratrix of the succession of Felix C. Amulong and as guardian/natural tutrix of the minor children Alexander Amulong & Alexis Amulong; Conrado A. Mendoza, individually and as administrator of the succession of his son, Edmundo Mendoza; Felicidad A. Mendoza, mother of Edmundo Mendoza; Arlene Manzanida, individually, as widow and administratrix of the succession of Noli Manzanida and as guardian/natural tutrix of the minor children, Krishna Manzanida, Krishtian Ace Manzanida & Krizhzar Manzanida, Plaintiffs-Appellants,

v.

WORLD TANKER CARRIERS CORP., et al., Defendants.

Arlene MANZANIDA, individually, as widow and administratrix of the succession of Noli Manzanida, and as guardian/natural tutrix of the minor children, Krishna Manzanida, Krishtian Ace Manzanida and Krizhzar Manzanida, et al., Claimants,

Cereol Italia, SRL, Claimant-Appellant,

Cipriano B. Dela Cruz, Claimant-Appellant,

Kara Mara Shipping Company, Ltd., as Disponent Owner of the M/V Ya Mawlaya, Petitioner.

Lorena A. SUMBI, individually as widow and administratrix of the succession of Emilio V. Sumbi, and as guardian/natural tutrix of the minor children, Ramil A. Sumbi and Emmanuel A. Sumbi, Plaintiff-Appellant,

v.

WORLD TANKER CARRIERS CORP., et al., Defendants.

Nov. 14, 1996.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before HIGGINBOTHAM, DUHÉ and BENAVIDES, Circuit Judges.

DUHÉ, Circuit Judge:

Plaintiff-Appellant World Tanker Carriers Corp. appeals the district court's dismissal of its maritime law claim against Defendants-Appellees *M/V Ya Mawlaya, et al.*[1] for want of personal jurisdiction. The court held that Appellant could not assert personal jurisdiction over Appellees pursuant to either the Louisiana long-arm statute or Fed.R.Civ.P. 4(k)(2). Because we conclude that the district court erred in its interpretation of Rule 4(k)(2), we reverse and remand.

## I. FACTUAL BACKGROUND

Two vessels, the *M/V Ya Mawlaya* ("*Ya Mawlaya*") and the *M/V New World* ("*New World*"), collided in international waters off the coast of Portugal. The *New World,* an ocean-going tanker registered under the laws of Hong Kong and owned by Appellant World Tanker Carriers Corp. ("World Tanker") of Liberia, was proceeding from Gabon to France. The *Ya Mawlaya,* an ocean-going bulk carrier registered under the laws of Cyprus, was proceeding to Italy with a cargo of soybeans, owned by Cereol Italia Srl.[2] and loaded in Destrahan, Louisiana, within the port of New Orleans. The ownership of the *Ya Mawlaya* is unclear; World Tanker alleges that the ship's

---

[1]These additional defendants-appellees include Holbud Ship Management Ltd., Holbud Ltd., Hydery (P) Ltd., Sperex Shipping Co., Ltd., SNP Ship Management & Consultation Bureau of Bombay; SNP Shipping Service Private Ltd., Roshanali Merali Roshanali Rajabali Dewji, Hasnain Merali, and Shaukat A. Merali. Herein, all *Ya Mawlaya* interests will be collectively referred to as "Kara Mara" or "Appellees."

[2]Cereol Italia Srl.'s motion for voluntary partial dismissal of its appeal as to Appellee Kara Mara Shipping Company, Ltd. in its suit (Civil Action 95-511) has been granted pursuant to Local Rule 42.1, without prejudice to Cereol's appeal as to the remaining Appellees.

registered owner is Kara Mara Shipping Company, Ltd., of Cyprus, while Appellees claim that the owner is Vestman Shipping Company, Ltd., also of Cyprus. Both have been named as defendants along with others, as individuals and as companies, all foreign, who allegedly have ownership or management interests in the *Ya Mawlaya,* Vestman Shipping Company, Ltd., and/or Kara Mara Shipping Company, Ltd.

The collision caused an explosion and fire, resulting in the deaths of eight crew members, personal injury to others, and property damage to the vessels and their cargoes. Several lawsuits were filed as a result: World Tanker sued Kara Mara under the general maritime law for damages arising from the collision (Civil Action number 94-4190); Cereol Italia Srl., the owner of the *Ya Mawlaya* 's cargo, sued both Kara Mara and World Tanker under the Carriage of Goods at Sea Act (COGSA), 14 U.S.C. 1300 *et seq.,* for the loss of its cargo (95-511); New World crewmen or their survivors sued World Tanker and Kara Mara for injuries and deaths (95-396, 95-1151, and 95-3295). In response to these suits, Kara Mara Shipping Company, Ltd. filed a limitation action (95-1948). All suits were consolidated.

Appellees moved to dismiss all proceedings against them, asserting as a defense lack of personal jurisdiction.[3] World Tanker, the lead plaintiff, opposed this motion, advancing two jurisdictional theories. First, World Tanker asserts that Appellees are subject to jurisdiction in the Eastern District of Louisiana under the Louisiana long-arm statute; this claim depends on the extent of Appellee's "minimum contacts" with Louisiana. Second, World Tanker argues that even if the court finds that minimum contacts have not been established, Appellees are nonetheless subject to the long-arm jurisdiction of the district court pursuant to Fed.R.Civ.P. 4(k)(2) based on their contacts with the nation as a whole.

The district court disagreed, granting Appellees' motion to dismiss and holding that neither the state long-arm statute nor Rule 4(k)(2) provides a basis for personal jurisdiction over Appellees.

---

[3]Kara Mara Shipping Company, Ltd., however, did not move to dismiss its limitation action, which is consolidated with the other actions. That action, therefore, is still pending before the district court. Pursuant to Fed.R.Civ.P. 54(b), however, the instant appeal is properly certified to us.

The court first found that World Tanker failed to establish a *prima facie* case of jurisdiction demonstrating Appellees' minimum contacts with Louisiana sufficient to satisfy the due process requirements of the state long-arm statute. The court then dismissed the case for lack of jurisdiction on the theory that it could not order the requested additional jurisdictional discovery under Rule 4(k)(2) because the consolidated cases did not present a claim "arising under federal law," the jurisdictional predicate of Rule 4(k)(2). The court interpreted this phrase as a reference to "federal question cases" and therefore found the rule inapposite insofar as World Tanker had not raised a federal question claim against Kara Mara. Because we disagree with the court's interpretation of Rule 4(k)(2), we cannot today hold that World Tanker cannot establish a *prima facie* showing of personal jurisdiction. We therefore reverse and remand for additional jurisdictional discovery pursuant to Rule 4(k)(2).[4]

## II. STANDARD OF REVIEW

"When the facts are not in dispute, we review *de novo* a district court's determination that its exercise of personal jurisdiction over a nonresident defendant is proper." *Wilson v. Belin,* 20 F.3d 644, 647-48 (5th Cir.1994); *see also Felch v. Transportes Lar-Mex Sa De CV et al.,* 92 F.3d 320, 324 (5th Cir.1996).

## III. DISCUSSION

*A. National Contacts Pursuant to Rule 4(k)(2)*

*1. Scope of Rule 4(k)(2)*

Fed.R.Civ.P. 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Rule 4(k)(2) thus sanctions personal jurisdiction over foreign defendants for claims *arising under federal law* when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the due process concerns

---

[4]Because we remand for further proceedings consistent with this opinion, we need not reach the merits of World Tanker's claim under the Louisiana long-arm statute.

of the long-arm statute of any particular state. *See Pacific Employers Ins. Co. v. M/T Iver Champion et al,* No. 91-0911, 1995 WL 295293, at *5 (E.D.La. May 11, 1995); 4 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1069 (Supp.1996).

At the core of this case is whether admiralty actions arise under federal law, an issue of first impression for this Court. Before we determine whether admiralty claims fall under Rule 4(k)(2), we must first consider the meaning of "arising under federal law." World Tanker argues that the district court improperly reads the jurisdictional predicate of Fed.R.Civ.P. 4(k)(2) narrowly as to circumscribe solely federal question cases. Several arguments rooted in text and legislative history support World Tanker's proposition.

The text of Rule 4(k)(2) does not, by its terms, limit itself solely to federal question cases. Instead, the rule states that it applies to "claims arising under federal law," the plain meaning of which incorporates all substantive federal law claims. The Advisory Committee Notes following Rule 4(k)(2) buttress this argument. Throughout its discussion of the Rule, the Advisory Committee refers to federal law broadly as substantive law, not narrowly as a jurisdictional requirement pursuant to 28 U.S.C. § 1331. For example, the Advisory Committee states that Rule 4(k)(2) "authorizes the exercise of territorial jurisdiction over the person of any defendant against whom is made a claim arising under *any federal law* if that person is subject to personal jurisdiction in no state." (emphasis added). The use of the word "any" to qualify "federal law" strongly suggests that the Advisory Committee intended Rule 4(k)(2) to reach not just federal question cases under § 1331 but all claims arising under substantive federal law. As the court in *United Trading Company S.A. v. M.V. Sakura Reefer et al.* points out, had the Advisory Committee meant to limit the scope of Rule 4(k)(2) to federal question claims, it clearly could have done so. No. 95-2846, 1996 WL 374154, at *4 (S.D.N.Y. July 2, 1996) (holding that Rule 4(k)(2) does apply to admiralty cases). Instead, it chose to describe the rule with the phrase "any federal law."

The Advisory Committee concludes its discussion by distinguishing federal law as substantive law distinct from state law, stating that "[t]his narrow extension of the federal reach applies only if a claim is made against the defendant under federal law. It does not establish personal jurisdiction

if the only claims are those arising under state law or the law of another country...."  Had the Advisory Committee intended to narrowly define "federal law" to refer only to subject matter jurisdiction pursuant to § 1331, it would have compared "arising under" jurisdiction to diversity jurisdiction, the other basis for federal court subject matter jurisdiction.  Instead, it chose to compare federal law with state law, suggesting that "federal law" is meant to be used in its broader, substantive law sense.[5]

The Rule's legislative history lends support to this argument.  Rule 4(k)(2) was adopted not as an adjunct to § 1331 but to correct an anomaly in the federal courts' *in personam* jurisdiction of alien defendants.  The Advisory Committee explained the purpose of the Rule:

> Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state long-arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction.

Thus, there was a gap in the courts' jurisdiction:  while a defendant may have sufficient contacts with the United States as a whole to satisfy due process concerns, if she had insufficient contacts with any single state, she would not be amenable to service by a federal court sitting in that state.  Although the Supreme Court recognized this problem in *Omni Capital International v. Rudolf Wolff & Co.,* it declined to correct it by decisional rule.[6]  "In *Omni Capital,* the Court determined that the

---

[5]In their discussion of Rule 4, commentators Wright and Miller define "federal question" as follows:

> The subject matter jurisdiction of the federal courts ordinarily is divided into jurisdiction based on diversity of citizenship, as set out in 28 U.S.C.A. § 1331 [sic], and federal question jurisdiction, which encompasses 28 U.S.C.A. §§ 1332-1364 [sic].  The term "federal question jurisdiction" sometimes is used more narrowly to refer only to subject matter jurisdiction based on a claim arising under the Constitution, laws, or treaties of the United States as provided in 28 U.S.C.A. § 1332 [sic].  The term is used in this section for its broader meaning.

> 4 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1067.1 n. 8 (1987 and Supp.1996) (incorporating this explanation in their discussion of Rule 4(k)(2)).  References to "federal question jurisdiction" are thus to be used interchangeably with descriptions of non-diversity federal claims.

[6]484 U.S. 97, 108-10, 108 S.Ct. 404, 411-13, 98 L.Ed.2d 415 (1987).  Speaking for a unanimous Court, Justice Brennan called upon Congress to fill the gap:

jurisdiction of a federal court, even in federal question cases, in the absence of a statutory provision for service, was limited by the forum state's long-arm statute as a result of the incorporation by Rule 4(e), and not by the Due Process Clause." 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069, at 88 (Supp.1996). Rule 4(k)(2) was adopted in response to *this* problem of a gap in the courts' jurisdiction; there is no suggestion in the Notes discussing Rule 4(k)(2) that the Rule was meant as a companion to 28 U.S.C.A. § 1331.[7] For these reasons, we hold, for purposes of Rule 4(k)(2), "arising under federal law" refers not only to federal question cases as understood in § 1331 but to all substantive federal law claims.

*2. Applicability of Rule 4(k)(2) to Admiralty Cases*

> We would consider it unwise for a court to make its own rules authorizing service of summons.... First, since Congress concededly has the power to limit service of process, circumspection is called for in going beyond what Congress has authorized. Second, as statutes and rules have always provided the measures for service, courts are inappropriate forums for deciding whether to extend them. Legislative rulemaking better ensures proper consideration of a service rule's ramifications within the preexisting structure and is more likely to lead to consistent application.

*Id.* at 109-10, 108 S.Ct. at 412-13.

[7]The district court cited *Omni Capital* in support of its proposition that "arising under federal law" encompassed only federal question cases. In *Omni Capital,* the Supreme Court urged a modest expansion of extraterritorial service of process in *federal-question* cases, unanimously observing that:

> A narrowly tailored service of process provision, authorizing service on an alien in a *federal-question case* when the alien is not amenable to service under the applicable state long-arm statute, might well serve the ends of the [Commodity Exchange Act] and other federal statutes.

*Omni Capital,* 484 U.S. at 111, 108 S.Ct. at 413 (emphasis added). This recommendation is considered the direct impetus behind Rule 4(k)(2). But nothing in this recommendation limits the federal long-arm provision solely to federal question cases in the narrow sense of the term as employed in § 1331. In fact, the Advisory Committee Notes following the rule state that *because of the gap* left open by the former rule, "the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts.... *In this respect,* the revision responds to the suggestion of the Supreme Court made in *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.....*" (emphasis added). Rule 4(k)(2), while responding to the suggestion of the Supreme Court, went further by including all claims arising under any federal law. Neither the language of *Omni Capital* nor the text or legislative history of Rule 4(k)(2) forecloses the possibility that cases "arising under federal law" may include admiralty cases. *See United Trading Co.,* 1996 WL 374154, at *4.

Concluding that Rule 4(k)(2) does indeed encompass claims arising under federal law, the issue becomes whether federal law incorporates admiralty law. In reaching its conclusion, the district court may have relied erroneously on the Supreme Court's opinion in *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), in which the Court rejected the argument that all cases arising under the admiralty "common law" necessarily arise under the federal question jurisdiction of federal courts under § 1331. The *Romero* principle has had procedural importance in the context of removal jurisdiction, *see e.g., In re Dutile,* 935 F.2d 61, 63 (5th Cir.1991) (citing *Romero* to explain that cases of admiralty and general maritime claims are not removable under § 1441(a)), and the right to jury trial, *see e.g., Rachal v. Ingram Corp.,* 795 F.2d 1210, 1216 (5th Cir.1986) (citing *Romero* for proposition that admiralty jurisdiction does not give right to jury trial). But even Justice Frankfurter's opinion in *Romero,* referring repeatedly to "federal maritime law," accepted uncritically the idea that the general maritime law constitutes our national law. In fact, the Supreme Court has long recognized the federal nature of maritime law. *See Southern Pacific Co. v. Jensen,* 244 U.S. 205, 215, 37 S.Ct. 524, 528-29, 61 L.Ed. 1086 (1917).

Article III, § 2, cl. 3 of the United States Constitution extends the judicial power of the federal sovereign to "all Cases of admiralty and maritime Jurisdiction." Congress first conferred the judicial power upon federal courts to hear maritime cases in the Judiciary Act of 1789. Today, that allocation of judicial competence over maritime claims is contained in 28 U.S.C. § 1333, which provides in part:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> > (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

The first clause thus allocates to federal courts the power to hear any matter which is in admiralty, regardless of the existence of a federal statute creating the maritime right, diversity of citizenship, or the minimum amount in controversy. *See* Frank L. Maraist, *Admiralty* 10 (3d ed. 1996). The second clause grants state courts subject matter jurisdiction, concurrent with federal courts, over most maritime matters. *See id.* at 10-11. Significantly, the second clause does not "grant[ ] states the right to apply their own substantive law to maritime matters pending in their courts...." *Id.* at 11. Application of the substantive law of that state with the most significant relationship to the

controversy is appropriate only when the "maritime but local" doctrine applies; that is, when the matter is maritime in nature but there is neither an applicable federal statute governing the claim nor a perceived need for uniformity of maritime law. *See id.* at 12; *see also* 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3671 (1985).

The substantive maritime law of the United States is thus federal law, except in the limited circumstances where the "maritime but local" doctrine applies. Policy concerns support a federal admiralty law. The Supreme Court has long recognized the necessity of a uniform national maritime law. *See Southern Pacific,* 244 U.S. at 217, 37 S.Ct. at 529 (stating that Constitution was designed to establish uniformity in maritime matters). This maritime law encompasses numerous statutes and a substantial body of judge-made law. *See* Maraist, supra, at 6 ("[T]he federal judiciary, fashioning a "federal admiralty common law.' has provided much of the substantive law of admiralty."); *see also* 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3671, at 419 (1985) (stating that constitutional grant of federal court jurisdiction over admiralty cases "has assumed the existence of a uniform body of substantive maritime law applicable throughout the country.").

Indeed, courts have observed repeatedly that maritime law is federal law. *See e.g. Yamaha Motor Corp., U.S.A. v. Calhoun,* --- U.S. ----, ---- n. 8, 116 S.Ct. 619, 626 n. 8, 133 L.Ed.2d 578 (1996) (referring to "[t]he federal cast of admiralty law"); *Tullier v. Halliburton Geophysical Svcs., Inc. et al.,* 81 F.3d 552, 553 n. 1 (5th Cir.1996) (referring to "federal maritime law"); *Guevara v. Maritime Overseas Corp.,* 59 F.3d 1496, 1513 (5th Cir.1995) (referring to need for uniformity within "federal admiralty law"). Moreover, since the enactment of Rule 4(k)(2), several district courts have recognized its applicability to admiralty cases. *See e.g. United Trading Co.,* 1996 WL 374154, at *3-*4 (holding that claims arising under admiralty law do fall within Rule 4(k)(2) rubric and criticizing district court in *World Tanker* for its narrow reading of Rule 4(k)(2)); *Nissho Iwai Corp. v. M/V Star Sapphire et al.,* No. 94-1599, 1995 WL 847172, at *3 (S.D.Tex. Aug. 24, 1995) (applying Rule 4(k)(2) to admiralty claim); *Eskofot A/S v. E.I. Du Pont De Nemours & Co. et al.,* 872 F.Supp. 81, 87 (S.D.N.Y.1995) (same). For the reasons stated above, we conclude that federal

law includes admiralty cases for the purposes of Rule 4(k)(2).

*3. Jurisdictional Analysis Under Rule 4(k)(2)*

Concluding that Rule 4(k)(2) applies to cases of admiralty, we have satisfied the first prerequisite to its employment. We must now consider whether the Rule provides a basis for personal jurisdiction over Appellees in the instant case. That is, we must determine whether Appellees have contacts with the nation as a whole sufficient to satisfy due process concerns. The now familiar minimum contacts analysis is used to determine whether the assertion of personal jurisdiction would offend "traditional notions of fair play and substantial justice." *Eskofot A/S,* 872 F.Supp. at 87, *citing Asahi Metal Indus. Co., Ltd. v. Superior Ct.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032-33, 94 L.Ed.2d 92 (1987); *see also Felch v. Transportes Lar-Mex Sa De CV et al.,* 92 F.3d 320, 323-24 (5th Cir.1996); *Pacific Employers Ins. Co. v. M/T Iver Champion et al.,* No. 91-0911, 1995 WL 295293, at *5 (E.D.La. May 11, 1995). The burden of persuasion remains with the plaintiff to make a *prima facie* showing of defendant's nationwide minimum contacts. *See Ham v. La Cienega Music Co. et al.,* 4 F.3d 413, 415 (5th Cir.1993).

Based on the record before us, we conclude that World Tanker has not carried its burden. We are persuaded by World Tanker's argument, however, that the district court foreclosed World Tanker's ability to make its *prima facie* showing when it dismissed the jurisdictional claim. The court's finding was premised on its conclusion that Rule 4(k)(2) did not apply to admiralty cases, and thus, an analysis of Appellees' nationwide contacts would be irrelevant. We determine that this conclusion is erroneous. Accordingly, we reverse and remand this case to the district court for additional jurisdictional discovery as to Appellees' nationwide contacts and further proceedings consistent with this opinion.

*B. World Tanker's Other Claims*

World Tanker also claims that either by way of sanction for failing to comply with discovery rules, or by waiver for filing a 46 U.S.C. § 103 action for limitation of damages, Kara Mara Shipping Company, Ltd. should be declared subject to the personal jurisdiction of the district court. In light of our decision today which requires the district court to revisit the personal jurisdiction issue and

which calls for additional discovery, we decline at this time a review of these other complaints bearing on the personal jurisdiction issue.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE AND REMAND.