Revised May 16, 2001

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-60591
_____

SUBMERSIBLE SYSTEMS, INC.,

Plaintiff/Appellee/Cross-Appellant,

v.

PERFORADORA CENTRAL, S.A. de C.V.,

Defendant/Appellant/Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Mississippi
_____

May 4, 2001

Before FARRIS[*], JOLLY, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Submersible Systems, Inc. ("SSI") sued Perforadora Central, S.A. de C.V. ("Central") in the southern district of Mississippi for the conversion of some of its equipment aboard a vessel owned by Central while that vessel was docked in a Mexican port. Following a bench trial, the district court awarded SSI more than $4.25 million in damages. Because the district court did not have personal jurisdiction over Central, we vacate the judgment of the

_____

[*]Circuit Judge of the Ninth Circuit, sitting by designation.

district court and remand with instructions to dismiss this case.

I.

SSI is a Louisiana corporation that operates small, remotely-operated, submersible vehicles used in underwater inspection, construction, and surveying. In the latter part of 1996, SSI contracted with Quantum Ingenieros, S.A. de C.V. ("Quantum") to provide the submersible vehicles for Quantum's inspection of certain oil and gas pipelines located in Mexican waters. As part of this project, Quantum also contracted with Central to transport the equipment, including SSI's submersible vehicles, and the personnel to be used to inspect the pipelines. To carry out this contract, Central dispatched the M/V DON FRANCISCO to Morgan City, Louisiana in November of 1996 to pick up SSI's equipment and transport it to its destination in Mexico.

Quantum was late paying both SSI and Central for their services, and Central twice brought its vessel back to port during the early months of 1997 to force Quantum to pay what it owed. By early June of 1997 Quantum owed both SSI and Central substantial sums for their services on the pipeline inspection project. As a result of Quantum's indebtedness, Quantum and Central agreed to end the charter of the DON FRANCISCO on June 23, 1997 and on that day the DON FRANCISCO returned to the port of Dos Bocas, Mexico. At that time, SSI had two employees, one of its submersible vehicles, and some other related equipment on board the DON FRANCISCO. All of SSI's equipment was clearly marked as belonging to SSI.

-2-

At about 9 am on the morning of the 23rd, the captain of the DON FRANCISCO woke the two SSI employees and told them that SSI's equipment had been seized to force Quantum to pay Central what it was owed for the charter of its vessel. Shortly thereafter, one of Central's agents boarded the vessel and inspected the immigration papers of the two SSI employees. Seeing that they were out of order, the agent reported the two men to the Mexican immigration authorities. The two SSI employees then left the vessel and spent the day getting their immigration papers in order. While they were gone, Central offloaded SSI's equipment from the DON FRANCISCO and put it into a locked yard at the port.

Wolfgang Burnside, the owner of SSI, arrived in Mexico on June 26, 1997 to demand the release of SSI's equipment. Central refused to release the equipment and instead deposited it with the Mexican Ministerio Publico. In later proceedings before the Ministerio Publico, Central asserted that the seized equipment belonged to Quantum and should be held pending an investigation of Quantum for its failure to pay its debts. Central was eventually appointed custodian of SSI's equipment for the Ministerio Publico and moved the equipment to Central's yard in Ciudad del Carmen, Mexico, where it was exposed to the elements.

After SSI filed this lawsuit, Central released the equipment in March of 1999 and SSI transported it back to the United States. However, because of prolonged exposure to the elements, the equipment had been rendered worthless.

II.

While it was attempting to get Central to return its property, SSI discovered that Central was building a marine drilling rig at the TDI Halter shipyard in Pascagoula, Mississippi. SSI then filed suit in the southern district of Mississippi, in May of 1998, for the conversion of its equipment by Central. SSI's suit invoked both the admiralty jurisdiction and the diversity jurisdiction of the district court. SSI prayed for attachment of the rig, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims or pursuant to Rule 64 of the Federal Rules of Civil Procedure and Mississippi law.

Central responded to the suit by moving to dismiss for lack of personal jurisdiction. Central argued that given the nature of the suit, it had insufficient contacts with Mississippi to subject it to suit in Mississippi. Central argued against attachment of its rig pursuant to Rule B by arguing that the district court had no admiralty jurisdiction, or in the alternative that it could be found within the southern district of Mississippi and so attachment under Rule B would be improper. Central argued against attachment pursuant to Rule 64 and Mississippi law on the grounds that it was not subject to suit in Mississippi. Central also moved to dismiss on the grounds of forum non conveniens.

The district court denied both motions. It ruled that the nature of Central's contacts with Mississippi made it subject to suit in Mississippi. The district court ruled that admiralty

jurisdiction existed in this case, but denied attachment under Rule B on two separate grounds. The district court first held that as Central was subject to jurisdiction in the southern district of Mississippi, it could also be found within the southern district of Mississippi. The district court next held, in the alternative, that SSI had not filed the affidavit required by Rule B regarding SSI's efforts to locate Central within the southern district of Mississippi. Having found Central subject to suit in Mississippi, the district court allowed attachment of Central's rig pursuant to Rule 64 so long as SSI posted a $1 million bond.[1] Concerning the <u>forum non conveniens</u> issue, the district court found that Mexico did not provide a civil remedy for conversion, and thus was not an adequate alternative forum. In ruling on both motions, the district court also ruled that United States general maritime law, and not Mexican law, should apply to the case.

Following a three day bench trial, the district court found that Central had converted SSI's equipment. The district court awarded SSI actual damages of $289,734.62, pre-judgment interest of $48,211.84, consequential damages of $106,520.50, lost profits of $2,311,140.00, and punitive damages of $1,500,000.00. Central moved for a new trial on the grounds that it had newly discovered evidence from the captain of the DON FRANCISCO concerning the events of June 23, 1997. The district court denied the motion,

---

[1]SSI never posted the bond and so never perfected its attachment.

holding that the captain's testimony was not credible, and that it was suspicious that he was located just a few days following the trial after being missing since the incident on June 23, 1997. Central then took this appeal.

Central argues on appeal that, 1) it is not subject to personal jurisdiction in Mississippi, 2) the district court has no admiralty jurisdiction in this case, 3) the district court should have dismissed this case on the grounds of forum non conveniens, 4) the district court should have applied Mexican law to this case, 5) the district court erred in its damages calculations in several respects, and 6) the district court should have granted it a new trial. SSI cross-appeals for an award of its costs and for attachment of Central's rig should we find that the district court did not have jurisdiction over Central.

### III.

We begin with the issue we find dispositive, namely whether the district court had jurisdiction over Central. Because the facts concerning Central's contacts with Mississippi and the United States are undisputed, the issue of personal jurisdiction in this case presents a question of law that we review de novo. World Tanker Carriers Corp. v. M/V YA MAWLAYA, 99 F.3d 717, 720 (5th Cir. 1996).

### A.

Absent a federal statute that provides for more expansive personal jurisdiction, the personal jurisdiction of a federal

district court is coterminous with that of a court of general jurisdiction of the state in which the district court sits. Fed. R. Civ. P. 4(k)(1). For a federal district court in a particular state to exercise personal jurisdiction over a defendant, that exercise of jurisdiction must first be proper under that state's long-arm statute. If the state long-arm statute allows the district court to exercise personal jurisdiction, the exercise of personal jurisdiction must also be proper under the Due Process Clause of the Fourteenth Amendment.

The Mississippi long-arm statute provides, in relevant part,

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code § 13-3-57. A plaintiff who is not a resident of Mississippi, such as SSI, may not take advantage of the contract portion of the Mississippi long-arm statute. Lifeline Ambulance Services, Inc. v. Laidlaw, Inc., 16 F.Supp.2d 686, 688 (S.D. Miss. 1998). Any tort committed by Central in this case was committed solely in Mexico. Thus, SSI may not take advantage of the tort portion of the Mississippi long-arm statute. By arranging to have a drilling rig built in a shipyard in Pascagoula, it could be

argued that Central did business in Mississippi. However, a non-resident plaintiff like SSI may not take advantage of the doing business portion of the Mississippi long-arm statute. Herrley v. Volkswagen of America, Inc., 957 F.2d 216, 218 (5th Cir. 1992); Smith v. DeWalt Prods. Corp., 743 F.2d 277, 279 (5th Cir. 1984); Lifeline, 16 F.Supp.2d at 688. Thus, Central is not subject to the personal jurisdiction of the Mississippi courts under the Mississippi long-arm statute.

Nor would a district court's exercise of personal jurisdiction over Central in Mississippi comport with the requirements of the Due Process Clause of the Fourteenth Amendment. Due process requires that a foreign corporate defendant, "establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which [the defendant] has incurred there." International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Shaffer v. Heitner, 433 U.S. 186, 207, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). An exercise of personal jurisdiction, even when a foreign corporate defendant has established sufficient contacts with a forum, must also be reasonable in light of the forum's interest in the litigation in question. Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 113-14, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

The extent of the contacts that a foreign corporate defendant

must establish with a forum to satisfy due process concerns differs depending on the nature of the litigation. In this case, Central's contacts with the state of Mississippi are wholly unrelated to SSI's claim that Central converted SSI's equipment in Mexico. When a plaintiff's claim does not arise out of a defendant's contacts with a forum, then the defendant's contacts with the forum must be, "continuous and systematic" to satisfy the requirements of due process. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994).

As commentators have recognized, the continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum. 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 108.41[3] (3d ed. 1999). The Supreme Court has upheld an exercise of personal jurisdiction when the suit was unrelated to the defendant's contacts with a forum only once. Id. Purchasing equipment in a forum and traveling to that forum on related business are, without more, insufficient to confer personal jurisdiction when the plaintiff's cause of action does not arise out of those purchasing activities. Helicopteros, 466 U.S. at 417.

Central's only contacts with the state of Mississippi grow out of its construction of a marine drilling rig at the TDI Halter

shipyard in Pascagoula.  Central contracted with TDI Halter for the construction of the rig, and also maintained an office at the shipyard with three employees to monitor the construction.[2]  These are not the sort of continuous and systematic contacts that would allow the district court to take jurisdiction over Central in this case.

In Helicopteros, the Supreme Court considered a tort claim against a Colombian helicopter operator arising out of a helicopter crash in Colombia.  The Colombian company had negotiated a contract in Houston, Texas to provide for the services that led to the crash.  The Colombian company had also purchased about 80% of its fleet of helicopters from a Texas company, had sent its pilots to Texas for training, had sent members of its management to Texas for technical consultations in connection with the purchase of its fleet, and had accepted payment for the services that led to the

_____

[2]SSI has argued that Central conceded personal jurisdiction in its opposition to attachment of the drilling rig under Rule B. Central did admit, as part of that opposition, to the contacts with Mississippi which are discussed above.  Central argued that those contacts meant that it could be found within the southern district of Mississippi and so attachment under Rule B would be improper. However, Central specifically stated that it was not thereby conceding the issue of personal jurisdiction outside of the context of Rule B attachment.  Central stated, "Perforadora does not dispute that the presence of the rig in the district itself is sufficient to satisfy general personal jurisdiction in the district for the purposes of Rule B <u>as Rule B is not subject to common law due process constraints. Maritime attachment warrants consideration of a more flexible application of the doctrines of due process consistent with its historical functions</u>."  4th Supplemental R. at 80 (emphasis added).  Whether Central is correct or not concerning what due process requires in the Rule B attachment context, Central cannot be said to have conceded the issue of personal jurisdiction.

-10-

crash in funds drawn on a Texas bank. In spite of all these contacts with the state of Texas, the Supreme Court held that they were insufficient to allow the Texas courts to take jurisdiction over the Colombian company, considering that the litigation was unrelated to the company's contacts with Texas. Id. at 416. In this case, Central, a Mexican company that has its headquarters in Mexico and that does business almost exclusively in Mexico, made contact with Mississippi only by virtue of its arrangement to construct one marine drilling rig in a shipyard in Mississippi. These contacts with Mississippi are even less substantial than those of the Colombian company with Texas in Helicopteros.

The Mississippi long-arm statute does not allow a federal district court sitting in Mississippi to take jurisdiction over Central in this case. Even if it did, such an exercise of personal jurisdiction would be inconsistent with the due process clause of the Fourteenth Amendment.

B.

SSI argues, as an alternative ground for supporting the judgment entered by the district court in its favor, that Federal Rule of Civil Procedure 4(k)(2) authorized the district court to assume jurisdiction over Central.

Rule 4(k)(2) provides,

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any

-11-

defendant who is not subject to the courts of general jurisdiction of any state.

Our court has previously held that claims falling within the admiralty jurisdiction of the federal courts are claims arising under federal law for the purposes of Rule 4(k)(2). World Tanker, 99 F.3d at 722-23.[3]

Rule 4(k)(2) applies to actions in which a federal court draws its authority directly from federal law, and does not borrow it from state law. The due process required in federal cases governed by Rule 4(k)(2) is measured with reference to the Fifth Amendment, rather than the Fourteenth Amendment. That is, Rule 4(k)(2) requires us to consider Central's contacts with the United States as a whole, and not just Central's contacts with the state of Mississippi. Id. at 720; Busch v. Buchman, Buchman & O'Brien, 11 F.3d 1255, 1258 (5th Cir. 1994); United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 36 (1st Cir. 1999). If Central has sufficient contacts with the United States, then the district court could have exercised jurisdiction over Central pursuant to Rule 4(k)(2).

In analyzing Central's contacts with the United States, we must keep in mind that this case does not arise out of Central's contacts with the United States. All the events constituting Central's conversion of SSI's equipment - the seizure aboard the DON FRANCISCO, the unloading of the equipment at the port of Dos

---

[3]We find Central's contention that the district court lacked admiralty jurisdiction in this case to be without merit.

Bocas, and the proceedings before the Mexican Ministerio Publico - took place in Mexico. Therefore, Central's contacts with the United States must be, "continuous and systematic" to have allowed the district court to take jurisdiction over Central pursuant to Rule 4(k)(2). Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000); BP Chems., Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 262-63 (3rd Cir. 2000).

The record reflects very few contacts between Central and the United States other than those related to the construction of the rig in Pascagoula. Central has an account at a Houston bank and sends some employees to an offshore drilling conference in Houston every year. Central has purchased spare parts and vessels in the United States, though to what extent is not clear from the record. Central's vessels have also occasionally called on United States ports. These contacts with the United States are, at best, sporadic and of small consequence. Central conducts no operations in the United States, maintains no office in the United States (other than the one which is maintained solely to oversee construction in Pascagoula), and owns no real or personal property located in the United States.

Because Central's contacts with the United States are not continuous and systematic, the district court had no authority to assume jurisdiction over Central pursuant to Rule 4(k)(2).

### C.

SSI, as part of its cross-appeal, has argued that if we find

that the district court lacks personal jurisdiction over Central then we should order attachment of Central's rig under construction in Pascagoula pursuant to Rule B and otherwise enforce the judgment entered by the district court. As we have explained, the district court did not have jurisdiction over Central. Nevertheless, we decline to order attachment of Central's rig pursuant to Rule B.

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims provides, in relevant part,

> In an in personam action:
> (a) If a defendant is not found within the district, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property - up to the amount sued for - in the hands of garnishees named in the process.
> (b) The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district.

Rule B allows a district court to take jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant. <u>Great Prize, S.A. v. Mariner Shipping Pty., Ltd.</u>, 967 F.2d 157, 159 (5th Cir. 1992). We have interpreted the requirement of Rule B that the defendant not, "be found within the district" as meaning that the defendant is neither subject to the jurisdiction of the district court nor amenable to service of process within the district. <u>Heidmar, Inc. v. Anonima Ravennate di Armamento Sp.A. of Ravenna</u>, 132 F.3d 264, 268 (5th Cir. 1998); <u>LaBanca v. Ostermunchner</u>, 664 F.2d 65, 67 (5th Cir. 1981).

The district court gave two grounds for denying SSI's motion

to attach the rig pursuant to Rule B. The district court held that Central could be found within the southern district of Mississippi because its contacts with Mississippi made it subject to jurisdiction there. The district court also held that SSI did not submit the affidavit required by Rule B stating that Central could not be found within the southern district of Mississippi. As discussed above, we disagree with the district court's conclusion that Central's contacts were sufficient to permit it to exercise jurisdiction over this action. Thus, the district court erred in concluding that Central would be found within the southern district of Mississippi for the purposes of Rule B. However, that conclusion does not mean that the district court erred in refusing to attach Central's rig pursuant to Rule B.

Rule B requires that a plaintiff seeking attachment pursuant to Rule B file an affidavit, as well as a verified complaint, concerning the presence of the defendant within the district in which the action is filed. As the district court held, and as our review of the record confirms, SSI did not file the required affidavit with its verified complaint when it sought attachment of Central's drilling rig. SSI has argued, on the basis of the holding in Amstar Corp. v. M/V ALEXANDROS T., 431 F.Supp. 328 (D. Md. 1977), that its verified complaint alone should suffice to allow attachment of the rig pursuant to Rule B. The district court in Amstar did excuse the lack of an affidavit from the plaintiff in that case given that the plaintiff also filed a verified complaint

-15-

which stated that the defendant could not be found within the district. However, Amstar does not stand for the proposition that a district court must excuse a plaintiff's failure to file the affidavit required by Rule B when the plaintiff also files a verified complaint. We cannot say that the district court erred in this case because it chose to enforce Rule B as it is written.

The affidavit required by Rule B serves a useful purpose: it assures the district court that the plaintiff has been diligent in searching for the defendant within the district in which the action is filed. Oregon v. Tug Go Getter, 398 F.2d 873, 874 (9th Cir. 1968); West of England Ship Owners Mut. Ins. Ass'n. v. McAllister Bros., Inc., 829 F.Supp. 122, 124 (E.D. Pa. 1993). As the district court said, the contacts that Central had with Mississippi raised questions about whether Central could be found within the southern district of Mississippi. Thus, it was especially important that SSI demonstrate that it had been diligent about searching for Central and that SSI was not seeking attachment merely for purposes of security or harassment. There was good reason for the district court to enforce Rule B as written and refuse to attach Central's rig.[4]

---

[4]Because we decide that the district court did not have personal jurisdiction over Central, we do not reach the other issues raised by Central in its appeal, including the choice of law question, the forum non conveniens issue, or the district court's calculation of damages. We also do not reach the question of whether ordering attachment of Central's rig would be consistent with the Supreme Court's holding in Shaffer in light of the fact that the district court did not otherwise have personal

IV.

For the reasons discussed above, Central was not subject to the personal jurisdiction of the district court.  Because SSI has failed to comply with the requirements of Rule B, we need not consider whether the district court could have taken jurisdiction over Central by attaching its property.  Therefore, the judgment of the district court is VACATED and this case is REMANDED with instructions to DISMISS this case for lack of jurisdiction.

---

jurisdiction over Central.