DNH, L.L.C., N–N–Out III, L.L.C. and N–N–Out Discount Market, L.L.C., all d/b/a N–N–Out Discount Market

v.

### IN–N–OUT BURGERS

No. Civ.A. 05–0938.

United States District Court, E.D. Louisiana.

June 24, 2005.

---

561

Robert B. Evans, IIII, Cesar Roberto Burgos, William B. Gordon, III, Burgos & Evans, LLC, New Orleans, LA, for Dnh, L.L.C., N–N–Out III, L.L.C. and N–N–Out Discount Market, L.L.C., all D/B/A N–N–Out Discount Market.

Raymond Gerard Areaux, Theodore S. Owers, III, Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux, New Orleans, LA, for In–N–Out Burgers.

*ORDER AND REASONS*

VANCE, District Judge.

Defendant In–N–Out Burgers, a California corporation, moves to dismiss plaintiffs' complaint for declaratory judgment, breach of contract and state law violations for lack of personal and subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2) and on abstention grounds. Plaintiffs oppose the motion. For the following reasons, the Court GRANTS defendant's motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs DNH, L.L.C., N–N–Out III, L.L.C. and N–N–Out Discount Market, L.L.C., all d/b/a N–N–Out Discount Market, are Louisiana corporations who operate convenience stores coupled with gas stations at three locations in Louisiana under the trade name "N–N–Out Discount Market." Defendant In–N–Out Burgers is a corporation organized under and with its principal place of business in California. In–N–Out Burgers operates restaurants in the states of California, Nevada and Arizona, under the mark "In–N–Out." Defendant has registered that mark and other similar marks with the United States Patent and Trademark Office.

In 2004, defendant learned that plaintiffs were using the trade name "In–N–Out Discount Market." On March 30, 2004, defendant sent plaintiffs a letter informing plaintiffs that their unauthorized use of the name "In–N–Out Discount Market" constituted infringement of defendant's trademarks. (Def.'s Mot. to Dismiss, Ex. A to Decl. of Sarah Brown). Defendant requested that plaintiffs phase out use of the infringing name and any other confusingly similar designation. (*Id.*). On July 26, 2004, the parties settled the dispute without litigation by entering a settlement

agreement in which plaintiffs agreed to refrain from using "the names 'IN & OUT,' 'IN–N–OUT,' 'IN N OUT,' 'IN AND OUT,' or any variation or combination of the individual words 'IN' or 'OUT,' in connection with their market or any other businesses." (*Id.,* Ex. B to Brown Decl. at ¶ 1). In exchange, defendant agreed that it would not file a complaint against plaintiffs for, among other things, trademark infringement and unfair competition that occurred before the execution date of the agreement, but it reserved "its right to file a complaint should [plaintiffs] breach any of the provisions herein and/or for any other actions or claims arising as of the joint execution date of this Agreement." (*Id.* at ¶ 5). Finally, the parties agreed that "[a]ny failure to comply with this Settlement Agreement may be enforced in any Federal and/or State Court," and they agreed that "California is an acceptable forum to resolve any dispute." (*Id.* at ¶ 8).

On March 8, 2005, defendant sent a second letter to plaintiffs, alleging that plaintiffs had failed to comply with the agreement. (*Id.,* Ex. C to Brown Decl.). Defendant asserted that plaintiffs were violating the agreement by continuing to use "In and Out" signage inside their business and by using outside signage that reads "N–N–Out." (*Id.*). Defendant demanded full compliance with the agreement and stated that, if it did not receive proof of compliance by March 15, 2005, it would sue plaintiffs in California under paragraph 5 of the agreement for injunctive relief, attorneys' fees and costs. (*Id.*).

Defendant sent a third letter to plaintiffs' counsel on March 22, 2005, memorializing plaintiffs' representation by telephone that they had removed the interior signage. (*Id.,* Ex. D to Brown Decl.). Defendant's letter urged plaintiffs to comply

with the terms of the parties' agreement and reiterated defendant's threat to sue under paragraph 5 of the agreement. (*Id.*).

A few days later, on March 25, 2005, plaintiffs sued defendant in this Court, seeking a declaratory judgment that plaintiffs' use of the trade name "N–N–Out Discount Market" does not infringe defendant's federally registered marks. (Pls.' Compl. at ¶ 1). Plaintiffs ground jurisdiction on 28 U.S.C. § 1338, which gives the Court original jurisdiction over civil actions arising under federal statutes relating to trademarks and over claims of unfair competition when they are joined with a substantial and related claim under the trademark laws. 28 U.S.C. § 1338. Plaintiffs request a declaratory judgment under 28 U.S.C. § 2201 that their use of the "N–N–Out Discount Market" mark does not infringe defendant's marks. Plaintiffs also sue for breach of the settlement agreement, alleging that the agreement permits the use of the letters "N–N" together. Finally, plaintiffs allege that defendant violated the Louisiana Unfair Trade Practices Act, abused its right in violation of Louisiana law, and breached its duty under Louisiana Civil Code Article 2315.

On May 16, 2005, defendant sued plaintiffs in California state court for breach of the settlement agreement and for an injunction requiring plaintiffs to comply with the terms of the agreement, or, in the alternative, for specific performance of the agreement. (Def.'s Request for Judicial Notice, Ex. A at 7–11).

Defendant now moves to dismiss plaintiffs' complaint in this Court. Defendant asserts that the Court may not properly exercise personal jurisdiction over it, that the Court lacks subject matter jurisdiction, and that, in the alternative, the Court should exercise its discretion to abstain

from asserting jurisdiction over this case. Plaintiffs oppose the motion.

## II. DISCUSSION

### A. Personal Jurisdiction

■ When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to show that personal jurisdiction exists. *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985). The allegations of the complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs. *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985). In making its determination, the court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of . . . recognized [discovery] methods." *Id.*

■ A court has personal jurisdiction over a nonresident defendant if (1) the forum state's Long–Arm Statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *See Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999). Because Louisiana's long-arm statute extends jurisdiction to the full limits of due process, the Court must determine only whether the exercise of its jurisdiction in this case satisfies federal due process requirements. LA.REV. STAT. ANN. § 13:3201(B). The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw,* 167 F.3d at 211 (citing *International Shoe*

*Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

■ The minimum contacts analysis asks whether the nonresident defendant purposefully availed himself of the benefits and protections of the forum state, thereby establishing "minimum contacts" with that forum state. *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994). Minimum contacts may give rise to specific personal jurisdiction or to general personal jurisdiction. *Id.* Specific jurisdiction exists when the plaintiff's cause of action arises from or is related to the defendant's minimum contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Wilson,* 20 F.3d 644 at 647. General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contacts with the forum state, if the defendant has engaged in "systematic and continuous" activities in the forum state. *See Helicopteros,* 466 U.S. at 414 n. 9, 104 S.Ct. 1868; *Wilson,* 20 F.3d at 647. Contacts between a defendant and the forum state must be "extensive" to satisfy the "systematic and continuous" test. *Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V.,* 249 F.3d 413, 419 (5th Cir.2001). As the Fifth Circuit has observed, the continuous and systematic contacts test for general personal jurisdiction is a difficult one to meet. *Id.*

### 1. Specific Jurisdiction

■ Plaintiffs argue that defendant has minimum contacts with Louisiana sufficient to warrant specific personal jurisdiction because defendant threatened to sue plaintiffs, entities located in Louisiana, in three letters and various phone calls and also negotiated the settlement agreement with them. These are the only contacts that arguably relate to plaintiff's causes of

action. Plaintiffs also argue that the Court should apply the "effects" test of *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), to its breach of contract, unfair trade practices, abuse of right and legal fault claims, which they allege arise from defendant's use of the cease-and-desist letters. Under the "effects" test, minimum contacts may exist when a nonresident defendant expressly aims intentionally tortious activity at the forum state and knows that the brunt of the injury will be felt by a forum resident. *Id.* at 789–90, 104 S.Ct. 1482.

■ Courts have repeatedly held, however, that cease-and-desist letters are insufficient to confer specific personal jurisdiction, because "[p]rinciples of fair play and substantial justice afford [a party] sufficient latitude to inform others of its ... rights without subjecting itself to jurisdiction in a foreign forum." *Compana, LLC v. Emke*, No. 3–03–CV–2372–M, 2004 WL 2058782, at *4 (N.D.Tex. Sept.15, 2004) (citing *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed.Cir.1998)); *see Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed.Cir.2003) (holding that exercise of specific personal jurisdiction based on letters threatening suit for infringement would not "comport with fair play and substantial justice"); *see also Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 n. 14 (5th Cir.1993) (citing *Cascade Corp. v. Hiab–Foco AB*, 619 F.2d 36 (9th Cir.1980) for the proposition that defendant does not, by sending letters alleging patent infringement to forum state, submit to personal jurisdiction there). Thus, "for the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit." *See Silent Drive, Inc.*, 326

F.3d at 1202. Because it would offend notions of fair play and substantial justice to exercise specific personal jurisdiction on the basis of the cease-and-desist letters that defendant sent, the "effects" test for minimum contacts is inapplicable to this case, and the sending of the letters do not serve as a basis for specific personal jurisdiction. Accordingly, the Court must examine whether defendant engaged in other activities directed at the forum and related to the cause of action.

Here, the only other activity that defendant undertook that is related to plaintiffs' claims is the negotiation of the settlement agreement. The Fifth Circuit has observed, however, that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *See, e.g., Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir.1986). This is particularly true when all of the contacts with the forum state occur for no other reason than "the mere fortuity that [plaintiff] happens to be a resident of the forum." *Id.* Further, defendant provides evidence that the agreement was negotiated exclusively by telephone, transmitted for signatures via facsimile, and involved no travel by defendant's employees to Louisiana. (Def.'s Mot. to Dismiss, Brown Decl. at ¶ 4). These contacts are legally insufficient to support the exercise of specific personal jurisdiction. *SMK Painting Co. v. Flournoy Constr. Co.*, 3:99–CV–0916–G, 1999 WL 1017779, at *5 (N.D.Tex. Nov.8, 1999) (citing *Holt Oil & Gas Corp.*, 801 F.2d at 778). When, as here, all of a defendant's contacts with the forum state occur merely because plaintiffs are residents of that state, there is nothing to indicate that the defendant purposefully directed its activities at the state or purposefully availed itself of the benefits and protections of the state. *See id.* For these reasons, the Court finds defendant does not have suffi-

cient minimum contacts with Louisiana such that the exercise of specific personal jurisdiction over defendant would comport with due process.

## 2. General Jurisdiction

■ Next, plaintiffs argue that the Court has general personal jurisdiction over defendant because of the unrelated contacts defendant has with Louisiana. The Court must examine the nature of all of defendant's contacts with Louisiana to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process. *See Helicopteros Nacionales,* 466 U.S. at 415, 104 S.Ct. 1868. To satisfy its burden to show that personal jurisdiction exists, plaintiffs offer evidence that defendant has the following additional contacts with Louisiana: (1) it has been a registered corporation and in good standing with the Louisiana Secretary of State since 1985; (2) it has appointed an agent for service of process within the State of Louisiana; and (3) it has denoted a "principal business establishment" in Louisiana. (*See* Pls.' Opp. to Mot. to Dismiss, Ex. B).

These contacts are not the kind of systematic and continuous activities in the forum state that would support the exercise of general jurisdiction. *Submersible Systems, Inc.,* 249 F.3d at 419. Qualifying to do business in a state and appointing an agent for service of process there do not amount to a "general business presence" of a corporation that could sustain an assertion of general jurisdiction. *See Wenche Siemer v. The Learjet Acquisition Corp.,* 966 F.2d 179, 181–83 (5th Cir.1992) (finding no authority to support "the proposition that the appointment of an agent for process and the registration to do business within the state, without more, suffices to satisfy the criteria for the exercise of general jurisdiction"); *see also Felch v.*

*Transportes Lar–Mex SA De CV,* 92 F.3d 320, 328 (noting that "[a]pplying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another"). Here, defendant has produced evidence that it has never exercised the privilege to business in Louisiana. Defendant attests that it conducts no business in Louisiana, does not directly market or promote its restaurants or products in Louisiana, does not ship products through Louisiana, and does not have any tangible assets, including real property or bank accounts, in Louisiana. (Def.'s Mot. to Dismiss, Decl. of Arnold Wensinger at ¶ 3). Further, defendant produced evidence that it has never conducted or solicited business of any kind in Louisiana. (Def.'s Reply to Pls.' Opp., Supp. Decl. of Arnold Wensinger at ¶ 3). Nor does defendant maintain an office or any other place of business in Louisiana. (*Id.*). The address listed in defendant's corporate registration is merely an address provided for service of process, not an actual place of business. (*Id.*). Defendant's contacts simply are not substantial enough to give rise to a reasonable expectation that it could be sued in Louisiana on any matter. *See Wilson,* 20 F.3d at 650–51; *see also Submersible Sys., Inc.,* 249 F.3d at 419 (finding defendant's contract with forum state company and maintenance of an officer in the forum state are not sufficiently continuous and systematic contacts to give rise to general personal jurisdiction); *Wenche Siemer,* 966 F.2d at 183 (noting that general jurisdiction does not exist even when defendant "had not only qualified to do business and appointed an agent for service of process, but maintained five salesmen in forum"); *see also Galapagos Corporacion Turistica "Galatours", S.A. v. The Panama Canal Comm'n,* No. 00–3190, 2002 WL 389143, at *4 (E.D.La. Mar.8, 2002) (even though defendant had agent, solicited business, purchased parts in forum, and availed itself of

forum's postal and banking systems, contacts still fell "far short of the systematic and continuous contacts constitutionally required" for general personal jurisdiction). Because defendant's contacts with Louisiana fall far short of the constitutionally mandated continuous and systematic contacts, the Court finds that it may not exercise general personal jurisdiction over the defendant.

 Finally, the Court rejects any suggestion that defendant has impliedly consented to jurisdiction in this Court by entering the settlement agreement, which states that "[a]ny failure to comply with this Settlement Agreement may be enforced in any Federal and/or State Court," and that "California is an acceptable forum to resolve any dispute." It is true that a litigant may give express or implied consent to the personal jurisdiction of a court "through a variety of legal arrangements." *PaineWebber Inc. v. The Chase Manhattan Private Bank*, 260 F.3d 453, 461 (5th Cir.2001) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Here, however, the Court cannot conclude that defendant impliedly consented to the jurisdiction of this Court by entering the settlement agreement. The only provision of the agreement that could be construed as consent to jurisdiction in this Court is the provision that allows the agreement to be enforced in any federal or state court. Such an argument proves too much. As the Fifth Circuit stated in *PaineWebber Inc.*:

> It would stretch this already strained logic beyond the breaking point to conclude that [defendant], a foreign corporation with no other meaningful connection to [the forum], impliedly consented to the jurisdiction of [this Court] by entering into an ... agreement that does not ... designate a geographic location more specific than the entire United States of America.

*See id.* at 463–64. The Court will not torture the settlement agreement to find a consent to nationwide jurisdiction.

### 3. Additional Discovery on Personal Jurisdiction

Plaintiffs assert that, if the Court finds that personal jurisdiction does not exist in this case, they should be allowed to conduct additional discovery regarding defendant's contacts with Louisiana. Plaintiffs base their request on evidence that three companies registered in Louisiana and using "In–N–Out" as a trade name have become voluntarily inactive. (Pls.' Opp. to Def.'s Mot. to Dismiss, Ex. C). Plaintiffs intimate that defendant may be responsible for the inactive status of these companies, which would indicate that defendant has had additional contacts with Louisiana in the past. (Pls.' Opp. to Def.'s Mot. to Dismiss at 8).

 The Court rejects plaintiffs' request for additional discovery. "[D]iscovery on matters of personal jurisdiction ... need not be permitted unless the motion to dismiss raises issues of fact." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.2000). And, "[w]hen the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Id.* Here, defendants have produced evidence that it has never had any contact with the now inactive entities identified by plaintiffs, which ceased operations 21, 30, and 19 years ago, respectively. (Def.'s Reply to Pls.' Opp., Supp. Decl. of Arnold Wensinger at ¶ 4). This evidence rebuts plaintiffs' suggestion that defendant has had additional contacts with Louisiana in the past. Plaintiffs have produced no other evidence that would rebut defendant's evidence on their lack of contacts or raise an issue of fact regarding

personal jurisdiction. *See Kelly,* 213 F.3d at 855. Accordingly, the Court finds that additional discovery on personal jurisdiction is not warranted.·

## B. Defendant's Other Arguments

Because the Court has determined that personal jurisdiction is lacking in this case, it need not proceed to examine the remainder of defendant's arguments in favor of dismissal.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss for lack of personal jurisdiction.