[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14838
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-22435-PAS


WORLD WIDE SUPPLY OU,

Plaintiff–Appellant,

versus

QUAIL CRUISES SHIP MANAGEMENT,
f.k.a. Happy Cruises, S.A.,
JEWEL OWNER LTD.,
INTERNATIONAL SHIPPING PARTNERS,

Defendants–Appellees,

HAINAN CRUISE ENTERPRISE, S.A.,

Interested Parties–Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 30, 2015)

Before TJOFLAT, WILSON and JULIE CARNES, Circuit Judges.

PER CURIAM:

This appeal concerns an attachment of property made pursuant to Supplemental Admiralty Rule B. The money at issue arose from the legal settlement of a dispute over the purchase of a cruise ship featured on ABC Television Network's long-running series, *The Love Boat*. The plaintiff below, and appellant here, has advanced a novel interpretation of Rule B. The district court was unpersuaded, as are we. Accordingly, we affirm the court's order vacating the attachment.

## I.     BACKGROUND

This appeal has a complicated background, involving multiple lawsuits in federal district courts, Florida state court, and a Spanish bankruptcy court. The common denominator of these suits is Quail Cruises Ship Management ("Quail"), from which multiple parties, including participants in this appeal, have tried to collect money that they believe Quail owes them.

2

Plaintiff–Appellant World Wide Supply OÜ ("Plaintiff") entered into a contract with Quail for Plaintiff to supply provisions for the M/V Gemini, a vessel owned by Jewel Owner Ltd. ("Jewel"). When Quail stopped making payments to Plaintiff for those provisions, Plaintiff sought a prejudgment attachment of Quail's property to recover the unpaid €123,122.28 balance. Specifically, on January 29, 2014, Plaintiff filed in the district court below an emergency motion for a Rule B attachment of what it contended to be Quail property: a sum of money Quail was to receive from Agencia de Viagens CVC Turlimitada ("Viagens"), pursuant to a settlement agreement between the two. It is that attachment, and its subsequent vacation by the district court below, that gives rise to the present appeal.

Years before, Quail had sued Viagens in the Southern District of Florida "for fraud based on the purchase of what was, at one point, the boat . . . that appeared in the show, The Love Boat." In an unrelated lawsuit, ongoing at the time of the Quail–Viagens suit, Quail and Jewel agreed to a settlement under which any recovery, up to €3,395,519.45, from Quail's suit against Viagens would be paid to Jewel to settle its unrelated claim. Despite this agreement with Jewel, on November 30, 2011, Quail finalized with Viagens a secret settlement agreement whereby Viagens would pay $5,000,000 to Quail's parent corporation, Quail Travel, which was then in bankruptcy proceedings in Spain. Of course, if kept undisclosed, this would mean that Jewel would be cheated out of the approximate

3

€3.4 million to which it was entitled under its own settlement with Quail. But learning of the secret agreement between Quail and Viagens, Jewel filed a motion to intervene in the Quail–Viagens suit and also filed a petition in the Circuit Court of Miami-Dade County against Quail and Viagens to prevent any transfer of the settlement proceeds, asserting theories of constructive trust and equitable lien.

Meanwhile, Hainan Cruise Enterprise, S.A. ("Hainan"), which had prevailed against Quail in yet another lawsuit in the Southern District of Florida, obtained a writ of garnishment against Viagens under Rule B, seeking to recover its own judgment from this same, now not-so-secret, $5,000,000 settlement agreement.

At this point, Quail Travel filed for Chapter 15 bankruptcy in the Southern District of Florida and claimed, as its own property, this same $5,000,000 "secret" settlement fund that Quail had promised to Jewel and that Hainan now claimed. Thus, there were three parties with claims to the settlement funds that Viagens was to pay to Quail: Jewel, Hainan, and Quail Travel. The district court overseeing Quail Travel's bankruptcy proceedings determined that Quail and Quail Travel each held an undivided 50% interest in the settlement proceeds. Quail's $2,500,000 portion, the district court ruled, was subject to Jewel's constructive trust and Hainan's Rule B attachment.

In compliance with that order, Quail, Jewel, Hainan, and Viagens verbally agreed to a settlement, under which Viagens would transfer Quail's $2,500,000

4

share of the settlement to a trust fund account held by Quail's counsel, Holland & Knight. Holland & Knight would, in turn, disburse $1,500,000 to Hainan and $1,000,000 to Jewel. Viagens' transfer to Holland & Knight was to be made in two equal installments made 30 days apart; Holland & Knight was to distribute each installment to Hainan and Jewel after it had been received.

On January 3, 2014, the first installment was made, with Viagens transferring $1,250,000 to Holland & Knight, after which Holland & Knight distributed $500,000 to Jewel and $750,000 to Hainan. However, just before the second transfer by Viagens, on January 29, 2014, Plaintiff filed the above-referenced emergency motion to attach and garnish the funds that were about to be transferred in the second distribution. Representing Plaintiff in this action was Moore & Company, P.A., which had also represented Viagens in the Quail–Viagens lawsuit and had represented Viagens in the distribution of the settlement funds as recently as one week before filing the emergency motion on behalf of Plaintiff. In Plaintiff's view, once Holland & Knight received the funds that had been attached in Hainan's Rule B motion, the funds were no longer protected by the Rule B attachment because, under Rule B(3)(a), the funds had to either remain "in the garnishee's hands or [be] paid into the registry of the court." Having left Viagens' hands, Plaintiff argued, the funds would become subject to Plaintiff's own new Rule B attachment.

5

In opposition to Plaintiff's motion, Jewel and Hainan ("Appellees") and Holland & Knight raised various arguments. First, they argued that the funds Plaintiff was attempting to attach were still subject to Hainan's prior Rule B attachment and Jewel's constructive trust. Second, they argued that Plaintiff's "emergency" motion represented no emergency at all because Plaintiff's counsel had served as counsel for Viagens during the negotiations leading to the verbal settlement, and therefore was well aware of when and how the funds would be transferred. Plaintiff therefore had been dishonest in its representations to the district court in support of its Rule B attachment. They similarly argued that Plaintiff, because of this knowledge, should have intervened earlier in the proceedings, rather than wait until the eleventh hour to manufacture an emergency. Finally, Appellees argued that Quail's interest was only in receiving the $2,500,000 owed to it from Viagens and it had no claim on any funds that had already been transferred to third parties, including the funds being held by Holland & Knight.

After hearing from the parties, a magistrate judge issued a report and recommendation suggesting that Plaintiff's Rule B attachment should be vacated. The district court adopted the magistrate judge's report and recommendation, giving three key reasons in support of its decision to vacate Plaintiff's attachment. First, the court held, Plaintiff was relying on a narrow, unpersuasive reading of

6

Rule B(3)(a), under which an attachment was lost as soon as the *res* left the hands of the garnishee or the court's registry. Second, the motion was not an "emergency," as Plaintiff had characterized it, because Moore & Company had just represented Viagens in the secret settlement negotiations and therefore knew exactly what was planned and when the distributions would take place. Third, the language in the settlement agreement pertaining to the transfer and disbursement of the funds did not leave those funds open to attachment. Quite simply, the funds were no longer the property of Quail at the time Plaintiff sought to attach them. Thus, Plaintiff's attachment was invalid and must be vacated.

Plaintiff had argued in its objections to the magistrate judge's report and recommendation that its interpretation of Rule B(3)(a) was not too broad. For the most part, Plaintiff admitted that money does not become subject to a new attachment simply because it has left the garnishee's hands. Nonetheless, Plaintiff argued, the money does become available for a new attachment if it is sent to "a third party non-garnishee found in this District and the property remains that of the debtor." But, as the district court noted, Plaintiff failed to object to the magistrate judge's finding that the money was no longer the property of debtor Quail at the time that Plaintiff sought to attach the funds. Because Plaintiff failed to contest that finding in its objections to the report and recommendations, and it was not

7

clearly erroneous, the district court accepted the findings and rejected Plaintiff's argument.

The district court issued its order vacating Plaintiff's Rule B attachment on September 23, 2014, and Plaintiff filed this appeal from that order.

## II.    MOTION TO DISMISS AS MOOT

After the filing of this appeal, Jewel and Hainan filed a joint motion to dismiss Plaintiff's appeal as moot, asserting that once the district court vacated Plaintiff's Rule B attachment of the funds, Holland & Knight distributed those funds to Jewel and Hainan, who then transferred them out of the district through their ordinary course of business.  Plaintiff had made no request that the funds be held pending the outcome of the appeal, and no court had ordered that the status quo be maintained.  Because the funds were no longer in the district,[1] Appellees argued that the district court lacked *in personam* jurisdiction over Quail, and thus the question whether the district court erred in vacating Plaintiff's Rule B attachment was moot.

Plaintiff countered that, with a Rule B attachment, *in personam* jurisdiction existed over the defendant—as opposed to *in rem* jurisdiction over the *res* itself— and therefore the fact that the property had left the district did not moot the appeal

---

[1] Jewel and Hainan provided affidavits to support their assertion that the funds had indeed left the district.

because the district court would again have personal jurisdiction over Quail if the attachment were reinstated.  Plaintiff further argued that the removal of the money from the district was premature because Hainan and Jewel were required to wait 14 days following the entry of judgment, which they had not done.[2]  *See* Fed. R. Civ. P. 62(a).

"If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed."  *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).  "The burden of establishing mootness rests with the party seeking dismissal."  *Beta Upsilon Chi Upsilon Ch. at the Univ. of Fla. v. Machen*, 586 F.3d 908, 916 (11th Cir. 2009).

Rule B attachments are known as "quasi-in-rem" proceedings, because they are not actions directly against the *res* as a fictitious person, as is the case in *in rem* actions, but are actions against a party who is not personally present in the district but whose property is present.  The Fifth Circuit has explained Rule B attachments, as follows:

> An *in personam* admiralty or maritime claim is instituted by a complaint which may contain a prayer for process to attach the defendant's property found within the district.  Whenever property is attached any person claiming an interest therein is entitled to a prompt hearing at which the plaintiff is required to furnish evidence

---

[2]  Hainan and Jewel have not responded to this last argument.

9

supporting the attachment or other appropriate relief.  It is sometimes inaccurately stated that the writ of attachment gives the district court *quasi-in-rem* jurisdiction over the defendant.    A more precise understanding is that a good-faith allegation in the complaint that the *res* is present within the geographical jurisdiction of the court is *the* jurisdictional fact which gives the court *in personam* jurisdiction over the defendant purported to own the *res*.

*Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157, 159 (5th Cir. 1992) (footnotes omitted).

Whether the subsequent departure of the *res* from a district in which it was originally present thereby deprives the court of jurisdiction is a question that is not entirely settled.  Generally, however, "[s]tasis is not a . . . prerequisite to the maintenance of jurisdiction.  Jurisdiction over the person survives a change in circumstances . . . ."  *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 88 (1992).  Noting that a civil forfeiture proceeding under 21 U.S.C. § 881 should "conform as near as may be to proceedings in admiralty," the Supreme Court has held that an appeal in an *in rem* forfeiture action is not mooted, and "the Court of Appeals is not divested of jurisdiction, by the prevailing party's transfer of the res from the district."  *Id.* at 84, 88–89.  Other circuits have applied this holding to Rule B attachments, determining that the departure of the attached *res* does not destroy jurisdiction.  *See Stevedoring Servs. of Am. v. Ancora Transp., N.V.*, 59 F.3d 879, 882 (9th Cir. 1995) ("We read . . . the Court's holding to eliminate any requirement on a party seeking to institute a maritime attachment to obtain a stay

10

or post a *supersedeas* bond to preserve the district court's jurisdiction over the garnished funds while it appealed the release of the garnished funds."); *Vitol, S.A. v. Primerose Shipping Co., Ltd.*, 708 F.3d 527, 540–41 (4th Cir. 2013) (same); *see also* 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 21-2, at 521 (5th ed. 2011) ("Even if the *res* is released [in a Rule B attachment action], the court retains jurisdiction.").

Therefore, even though this Court has not directly confronted the question of whether the *Republic National Bank of Miami* principle extends to Rule B attachments, the above persuasive authority leads us to assume that a Rule B attachment is not mooted simply by the fact that the *res* has left the district. Indeed, even in a maritime *in rem* action, where the action is directly against the *res*, the departure of the *res* from the district does not necessarily moot the case. *Republic Nat'l Bank of Miami*, 506 U.S. at 84 ("[T]he Government relies on what it describes as a settled admiralty principle: that jurisdiction over an *in rem* forfeiture proceeding depends upon continued control of the res. We, however, find no such established rule in our cases."); *see also United States v. One Lear Jet Aircraft, Serial No. 35A-280, Registration No. YN-BVO*, 836 F.2d 1571, 1579 (11th Cir. 1988) (en banc) (Vance, J., dissenting) ("As the doctrine of personification of the ship loses force, so should the rules which rest on it. Among the many such rules which courts have begun to jettison is the rule that the

11

presence of the *res* within the jurisdiction of the court is an absolute prerequisite to the court's jurisdiction." (citations omitted)).[3]

Rather, the departure of the *res* moots the case only if further proceedings would be "useless," and as the Supreme Court made clear, the "enforceability of judgments" does not "depend[] absolutely upon the continuous presence of the res in the district." *Republic Nat'l Bank of Miami*, 506 U.S. at 87–88.  The purpose of a Rule B attachment, as the Second Circuit has explained, is two-fold:  "first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437–38 (2d Cir. 2006), *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldh: Overseas Pty Ltd.*, 585 F.3d 58 (2d Cir. 2009).  If an absconding *res* does not necessarily undermine the enforceability of a judgment, nor revoke the court's personal jurisdiction over the defendant, then mootness does not result.  This interpretation, moreover, makes good sense, because it removes an incentive for defendants or garnishees to remove the *res* from the district.  *See Stevedoring Servs. of Am.*, 59 F.3d at 882–83 ("Maintaining a continuous-control requirement

---

[3] The majority of this Court in *One Lear Jet* held that in an *in rem* forfeiture action jurisdiction was lost because the *res* was removed from the district after the district court's final judgment, but before the appeal was heard.  836 F.2d at 1573 ("Where an appellant fails to file a stay of judgment or a supersedeas bond, and the *res* is removed from the court's territorial jurisdiction, the appellate court does not have *in rem* jurisdiction.").  One of our subsequent applications of that holding, however, was reversed by the Supreme Court in *Republic National Bank of Miami*, which cited Judge Vance's *One Lear Jet* dissent approvingly.  *See Republic Nat'l Bank of Miami*, 506 U.S. at 83–84, 88.

12

in *quasi in rem* proceedings would preserve an advantage for prevailing parties eliminated and criticized in the *in rem* context, the opportunity to shield a district court victory from review.").

It is apparent that a favorable judgment for Plaintiff on this appeal would not be a "useless" judgment for precisely the reason that Plaintiff articulates. It would allow Plaintiff to maintain the district court's personal jurisdiction over Quail because Plaintiff would then arguably have a valid Rule B attachment. *See Puerto Rico Ports Auth. v. BARGE KATY-B, O.N. 606665*, 427 F.3d 93, 102 (1st Cir. 2005) (pertaining to *in rem* action but indicating that the departure of the *res* did not deprive court of jurisdiction because a favorable judgment "could serve as a basis either for re-arresting the barge at any American port or for an in personam action against the barge's owner."). Should Plaintiff subsequently succeed in an action against Quail for the unpaid balance on the provisions it provided, the fact that it might not immediately be able to execute the judgment does not make such a judgment useless, because Plaintiff could seek to enforce it in another district where Quail could be found. *See Republic Nat'l Bank of Miami*, 506 U.S. at 87–88.

Thus, Appellees have not established mootness, and their motion to dismiss the appeal for mootness is **DENIED**. We thus proceed to the merits of the appeal.

13

## III.    STANDARD OF REVIEW

We review a district court's order vacating a maritime attachment for abuse of discretion.  *See Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 66 (2d Cir. 2009).  A district court abuses its discretion if it fails to apply the proper legal standard or follow proper procedures in reaching its determination, or if it makes a finding of fact that is clearly erroneous.  *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006).

## IV.    WAS THE RULE B ATTACHMENT PROPERLY VACATED?

Under Rule B:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

Fed. R. Civ. P. B(1)(a); *see also Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 463 F.3d 1233, 1238 (11th Cir. 2006).  Rule B therefore requires, as a precondition to its application, that the defendant not be present in the district, but that the defendant's property must be present there.  Process is then served on the person in possession of the property, who becomes the garnishee.  Fed. R. Civ. P. B(1)(a).  That garnishee has certain responsibilities:

> The garnishee shall serve an answer, together with answers to any interrogatories served with the complaint, within 21 days after service

14

of process upon the garnishee.  Interrogatories to the garnishee may be served with the complaint without leave of court.  If the garnishee refuses or neglects to answer on oath as to the debts, credits, or effects of the defendant in the garnishee's hands, or any interrogatories concerning such debts, credits, and effects that may be propounded by the plaintiff, the court may award compulsory process against the garnishee.  *If the garnishee admits any debts, credits, or effects, they shall be held in the garnishee's hands or paid into the registry of the court, and shall be held in either case <u>subject to the further order of the court</u>.*

Fed. R. Civ. P. B(3)(a) (emphases added).

Plaintiff's argument that its attachment was improperly vacated comes down to its reading of the last sentence of Rule B(3)(a).  Plaintiff contends that this sentence opens a window for its own Rule B attachment because the settlement funds were neither deposited into the district court's registry nor, once Viagens had transferred the funds to Holland & Knight, a non-garnishee, held by the garnishee.  Moreover, according to Hainan's motion to release the funds, they were to remain the "property of Quail" throughout the process.  In short, Plaintiff argues that when it sought the writ of attachment, the funds were still Quail's property and were held in the district by a party that was not a garnishee.  Because this was contrary to the command of Rule B(3)(a), Hainan's writ of attachment lapsed and Plaintiff contends it could then seek its own Rule B attachment.

In their joint response, Appellees argue that the funds were not the property of Quail—they were being held in trust for Hainan and Jewel—and therefore they

15

were not available for attachment by Plaintiff.  Appellees further argue that the funds remained under the authority of federal courts during the two-stage disbursement process and that the Hainan Rule B attachment was never vacated.

Plaintiff cites no authority in support of its position that, under these conditions, a Rule B attachment lapses or a party may assert a new Rule B attachment.  Nor can this Court find any legal support for this novel view.  The text of Rule B(3)(a) nowhere says that an attachment lapses if the court orders the *res* transferred to a non-garnishee for distribution to the ultimate recipients.  Moreover, although the text of Rule B(3)(a) does state that the funds should be held in the court's registry or by the garnishee, it immediately afterwards says that that is "subject to the further order of the court."  That is precisely what was done here, with Viagens holding the funds until the court ordered them distributed, first to Holland & Knight, then to Hainan and Jewel.  Plaintiff's reading of Rule B(3)(a) therefore holds no water, either as a stand-alone interpretation or as applied to this case.

Further, the record undermines Plaintiff's factual characterization of the case.  In its motion to the district court, Hainan stated:

> Hainan does not wish to dismiss the subject action until it has received full payment of the portion it is due under the Chapter 15 settlement. [Viagens] does not wish to violate the Federal Attachments and therefore will not commence any of the transfers outlined above without authority from this Honorable Court.  Accordingly, the parties

16

have agreed and hereby request that the Court issue an Order authorizing [Viagens] to initiate the transfer outlined above notwithstanding the Federal Attachments.

Thus, Hainan proposed that "[u]pon Hainan's receipt of full payment of its portion of the $2.5 Million that is the property of Quail . . . , this action shall be dismissed with prejudice . . . ."  The district court signed Hainan's proposed draft order, which stated:

> 2.    [Viagens] will transfer $2.5 million that is the property of Quail . . . to the [Holland & Knight] Account.
>
> 3.    [Viagens] will transfer $2.5 million that is the property of Quail Travel to the Quail Travel Account.
>
> 4.    Upon Hainan's receipt of the full payment of its portion of the $2.5 million that is the property of Quail . . . , the parties shall forthwith file a stipulation of dismissal with prejudice, with each party to bear its own attorney's fees and costs.

It is clear that, in context, the reference to "the property of Quail" is meant to distinguish the $2,500,000 earmarked for Hainan and Jewel from the same amount of money that was to go to Quail Travel.  There is no plausible rationale for Plaintiff's interpretation that Hainan wanted to make sure that the funds remained Quail's property throughout the process.

For these reasons, we conclude that the Hainan Rule B attachment remained in effect until after the receipt of the funds by Hainan and Jewel.  Contrary to Plaintiff's assertions, it is irrelevant that the funds were transferred to non-

17

garnishee Holland & Knight for disbursement because the Hainan Rule B attachment remained in effect until the funds had been received by Hainan and until the parties thereafter filed their stipulation of dismissal with prejudice.

## V.    CONCLUSION

The district court did not err in vacating Plaintiff's Rule B attachment because the funds Plaintiff sought to attach were at that time still subject to the prior Hainan Rule B attachment.

**AFFIRMED.**

18