[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-14440

Non-Argument Calendar

_____

HART AGRICULTURE CORPORATION,
RICHARD WATSON,

                                                    Plaintiffs-Appellants,

versus

KEA INVESTMENTS LIMITED,

                                                    Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 1:20-cv-00018-JRH-BKE

2                    Opinion of the Court                    20-14440

_____

_____

No. 20-14451

Non-Argument Calendar

_____

HART DAIRY CREAMERY CORPORATION,
TIMOTHY CONNELL,

Plaintiffs-Appellants,

versus

KEA INVESTMENTS LIMITED,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-20452-BB

_____

Before JORDAN, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

Timothy Connell, Richard Watson, and their companies sued Kea Investments—in two separate proceedings—for declaratory judgments that they weren't liable for a judgment Kea won against Richard Watson's brother Eric[1] in the United Kingdom and for permanent injunctions to prevent Kea from joining them to litigation in the United Kingdom.

District courts in the Southern District of Florida and the Southern District of Georgia dismissed both cases because they concluded that they lacked personal jurisdiction over Kea and in rem jurisdiction over Connell's and Richard's assets. We affirm.

## FACTUAL BACKGROUND

Richard owned a 4,000 acre dairy farm in southern Georgia called Hart Agriculture Corporation. Eric was a New Zealand businessperson who didn't own any of Hart Agriculture. Connell was the chief executive officer and owner of Hart Dairy Creamery Corporation. Hart Dairy was Hart Agriculture's exclusive buyer of raw milk. Eric wasn't an owner or investor in Hart Dairy.

Eric entered into a joint venture with a Monaco businessman named Glenn Owen. The joint venture dissolved into a "long and drawn out legal battle" in the United Kingdom. Glenn's company, Kea Investments, won an $87 million judgment against Eric and other defendants in the "High Court of Justice, Business and Property Courts of England and Wales." Richard, Connell, Hart

---

[1] Because they share a last name, we refer to them as Richard and Eric.

Agriculture, and Hart Dairy weren't parties to the litigation in the United Kingdom or to the judgment.

After obtaining the judgment, Kea tried to identify and obtain Eric's assets to satisfy the judgment. Beginning in October 2018 and continuing through January 2020, Kea sent letters to Connell—through Connell's lawyer in New Zealand—because Connell had received money from a Panamanian company connected with Eric. Kea said that, based on Eric's prior actions, it thought that he was trying to avoid satisfying the judgment by squirreling away his money with his friends and family. Kea contacted Connell—Eric's friend—because there was "no explanation of how or on what terms" Connell had become the beneficial owner of "a very substantial quantity" of Eric's shell company.

In one letter, Kea said:

Mr Connell and Mr Watson's brother, Mr Richard Watson, had set up together an entity called Hart Dairy which was to market . . . the milk produced by a company called Hart Acquisitions, which owns dairy farms in Georgia. When asked further questions, [Eric] said that Hart Dairy was owned by Mr Connell and '*a bunch of investors*', with Richard Watson holding only a small shareholding in it. Later, having said that Hart Dairy might in fact be called Hart Holdings USA LLC, or that it might be a subsidiary of that company, [Eric] described Hart Holdings USA LCC [sic] as '*Tim Connell's company and my*

*brother may have a minority shareholding in it.'*
However, in [Eric's] 6th affidavit he resiled from this
story and said that Hart Holdings was wholly owned
by Richard Watson.

Based on this testimony and Connell's stock trading history, Kea
asked Connell to explain his prior corporate dealings with Eric and
his shell companies in relation to Connell's business activities with
"Hart Holdings/Hart Dairy/International Dairy and any related
entities." Kea also said that it was considering joining Connell and
his company to the proceeding in the United Kingdom to help sat-
isfy its judgment against Eric. In total, Kea sent three letters to
Connell about six months apart, the last in January 2020.

## PROCEDURAL HISTORY

### *Southern District of Florida Litigation*

Connell and Hart Dairy sued Kea in the Southern District of
Florida seeking a declaration that: (1) they were subject to personal
jurisdiction in the Southern District of Florida and not in the United
Kingdom; (2) their assets were subject to jurisdiction in rem in the
Southern District of Florida and not in the United Kingdom; and
(3) they were not liable to Kea for its judgment against Eric. They
also sought an anti-suit injunction to prevent Kea from joining
them to the proceeding in the United Kingdom. As to jurisdiction
in the United Kingdom, Connell admitted that he took out a two
million dollar loan in funds that "appear[ed] potentially to have
been traceable to transactions addressed" in the United Kingdom
action and therefore conceded that the United Kingdom court had

in rem jurisdiction over those funds—but not over Hart Dairy or Connell's other assets, or personal jurisdiction over Connell himself.

After Kea defaulted, Connell and Hart Dairy moved for a final default judgment as to both the declaration and the injunction. They argued that their lawsuit and the lawsuit in the United Kingdom both concerned the same assets—Connell's and Hart Dairy's property—and the lawsuit in the United Kingdom was a threat because the foreign court would order the assets to be removed from the district.

The district court denied the motion for a final default judgment for lack of personal jurisdiction. It directed Connell and Hart Dairy to file a renewed motion explaining why Kea was subject to personal jurisdiction in the Southern District of Florida and why the district court should exercise its discretionary power to issue an anti-suit injunction which would interfere with the ongoing litigation in the United Kingdom.

In their renewed motion, Connell and Hart Dairy argued that Kea's enforcement actions directed at them created minimum contacts in Florida. And they argued that their property's presence in the Southern District of Florida supported in rem jurisdiction. Finally, they argued that the anti-suit injunction would "merely prevent Kea from improperly instigating foreign litigation premised upon an improper invocation of such jurisdiction."

The district court denied the renewed motion for jurisdictional and prudential reasons.  First, it concluded that it didn't have personal jurisdiction over Kea because Connell and Hart Dairy hadn't alleged that Kea conducted business in Florida.  Second, the district court explained that in rem jurisdiction considered where the defendant's, not the plaintiff's, property was located.  It concluded that Connell's and Hart Dairy's property in southern Florida didn't mean that the district court had jurisdiction over Kea. The district court continued that, even if it had personal jurisdiction, it wouldn't exercise its discretion to issue an anti-suit injunction because doing so would deprive the court in the United Kingdom of the ability to enforce its valid judgment and the district court presumed that, if Connell and Hart Dairy were right that they weren't subject to jurisdiction there, the court in the United Kingdom wouldn't proceed against them.  The district court then dismissed the case and Connell and Hart Dairy appealed.

### Southern District of Georgia Litigation

Richard and Hart Agriculture also sued Kea but in the Southern District of Georgia.  Their complaint was almost identical to Connell's and Hart Dairy's and sought similar relief:  a declaration that they were subject to personal and in rem jurisdiction in the Southern District of Georgia and not in the United Kingdom and that they were not liable for the United Kingdom judgment, and an anti-suit injunction to prevent Kea from joining them to United Kingdom litigation.  The only major difference was that Richard

and Hart Agriculture didn't allege that they owned any stock subject to in rem jurisdiction in the United Kingdom.

After Kea defaulted, Richard and Hart Agriculture moved for a final default judgment as to both the declaration and the permanent injunction. They made the same arguments that Connell and Hart Dairy did.

The district court denied the motion because it lacked personal jurisdiction over Kea as to both the Georgia long-arm statute and due process. As to the Georgia long-arm statute, the district court held that the complaint did not allege facts sufficient to satisfy any of the bases for personal jurisdiction over a nonresident defendant listed in the statute. The district court explained that the complaint didn't allege that Kea had conducted any business in Georgia, committed a tortious injury in Georgia, or own, use, or possess any real property in Georgia. Without these crucial allegations, the district court held, it didn't have personal jurisdiction over Kea. And as to due process, the district court held that Kea lacked any contacts in the Southern District of Georgia and the mere presence of Richard's and Hart Agriculture's assets—not Kea's—did not provide in rem jurisdiction.

Richard and Hart Agriculture renewed their motion for a final default judgment. As to personal jurisdiction, they alleged that Kea had (1) engaged in "very substantial litigation in the United States"; (2) "engaged in a broader global series of litigations in at least six jurisdictions"; (3) "written to counsel for [Richard and Hart Agriculture] and to [their] exclusive buyer of raw milk [Connell]

asserting that [Richard and Hart Agriculture] are already subject to strictures ostensibly imposed upon them by the U.K. Judgment"; (4) claimed that Richard's and Hart Agriculture's assets were "subject specifically to enforcement in rem as putative assets of [Eric]"; (5) demanded that Richard and Hart Agriculture provide discovery of their assets and records; (6) explicitly stated that Kea intended to haul Richard and Hart Agriculture into court in the United Kingdom; and (7) admitted to intentionally defaulting in the lawsuit in the Southern District of Georgia.  Based on these acts, they contended, Kea should anticipate being brought into the court where the targets of its enforcement actions resided.  As to in rem jurisdiction, Richard and Hart Agriculture argued that jurisdiction was proper because the disputed property was in the district.

The district court denied the renewed motion because the letters from Kea to Connell didn't constitute a business transaction under Georgia law.  And, as to in rem jurisdiction, the district court concluded the suit sought to prevent Kea from pursuing litigation and so "[w]hether the anti-suit injunction [was] granted or not [had] no bearing on the interest of the Plaintiffs and Defendant in the *res.*"  Richard and Hart Agriculture appealed.

## STANDARD OF REVIEW

"We review de novo whether the district court had personal jurisdiction over a nonresident defendant." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

## DISCUSSION

The Appellants[2] argue that the district courts could exercise personal jurisdiction over Kea because of the letters Kea sent to Connell's counsel in New Zealand and the "contemplated future consequences" of those letters. We disagree.

"A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2005). Because whether a defendant is subject to personal jurisdiction depends on state law, we divide our discussion of personal jurisdiction into two parts—one for Florida and one for Georgia.

### Florida

The Appellants argue that Kea "is a passive investment vehicle" and therefore "conducts no operations other than holding its assets and enforcing upon its claims." Specifically, they claim that, even though Kea addressed its letters to Connell's counsel in New Zealand, the letters were "meant to effect and be received by Appellants in their home fora."

---

[2] We combined the two cases on appeal. For ease of reference, we refer to the four plaintiffs as "Appellants." We also issued two jurisdictional questions to ensure that the parties were fully diverse. We are satisfied that the parties are diverse and so **DENY** all pending motions to supplement the record and to amend the complaints.

The Florida long-arm statute provides specific personal jurisdiction over anyone who is "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency." Fla. Stat. § 48.193(1)(a)(1). Under this section, "the defendant's activities must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Stonepeak Partners, LP v. Tall Tower Cap., LLC*, 231 So. 3d 548, 556 (Fla. Dist. Ct. App. 2017) (quotation marks omitted).

Here, Kea was not engaged in business in Florida. Kea sent three letters to a lawyer in New Zealand asking for information about Connell's and Hart Dairy's assets and if they were traceable to Eric. But Connell's complaint is silent as to whether Kea has any agents or offices in Florida, has any revenue from Florida, or even has a license to do business in Florida. Florida state courts have consistently required more than merely sending three information-gathering letters to be subject to personal jurisdiction in Florida under the "carrying on business" prong of the Florida long-arm statute. *See, e.g.*, *Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc.*, 726 So. 2d 313, 314 (Fla. Dist. Ct. App. 1998) (holding that selling nineteen lists of customers over a two-year period did not constitute general course of business activity in the state for pecuniary benefit); *Sebra v. Int'l Spec. Imports, Inc.*, 869 So. 2d 732, 734 (Fla. Dist. Ct. App. 2004) (holding that the defendant's one-time business trip to locate a site for a supermarket did not constitute operating a business); *Joseph v. Chanin*, 869

So. 2d 738, 740 (Fla. Dist. Ct. App. 2004) (holding that four transactions—closing savings accounts and safe deposit boxes—were not carrying on a business because "they were not of a nature or extensive enough to constitute the 'carrying on a business or business venture'"). With no office, agent, or sales in Florida, sending a few exploratory letters isn't enough to constitute "carrying on a business" to subject Kea to specific personal jurisdiction in Florida.

### Georgia

The Georgia long-arm statute provides specific personal jurisdiction over an out-of-state defendant if it "transacts any business within" Georgia. O.C.G.A. § 9-10-81(1). Transacting business requires that the "nonresident defendant has purposefully done some act or consummated some transaction in [Georgia]." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 594 F.3d 1249, 1264 (11th Cir. 2010) (quoting *Aero Toy Store, LLC v. Grieves*, 631 S.E. 2d 734, 737 (Ga. App. Ct. 2006)). Intangible acts also may be considered, including mail and telephone calls. *Id.*

Kea's connection to Georgia is even more attenuated than its connection to Florida. Kea owns no property in Georgia, has no agents or offices in Georgia, and solicits no business from Georgians. Unlike Florida, Kea did not even mail a letter to Richard's lawyer—the only connection to Georgia is that Kea mentioned a dairy farm in Georgia in a letter to Connell. Unlike the cases Richard cites, Kea never contacted him *at all*. Kea is not subject to personal jurisdiction in Georgia because it never contacted or solicited business from anyone in Georgia. In the light most favorable to

Richard and Hart Dairy, Kea asked a New Zealand lawyer about his Florida client's connections to a United Kingdom judgment debtor and *mentioned the business* of a Georgia citizen. That is not enough to constitute operating a business in Georgia. *See Intercontinental Servs. of Del, LLC v. Kent*, 807 S.E. 2d 485, 490 (Ga. App. Ct. 2017) (finding no personal jurisdiction where the defendant had no offices, agents, and merely did loading and unloading at a port in Delaware). [3]

### In Rem Jurisdiction

Appellants fall back to the position that—even if the district courts didn't have personal jurisdiction and couldn't issue injunctive relief—the district courts still had in rem jurisdiction over their assets and so could issue declaratory relief. But this argument doesn't save their cases because: (1) they didn't proceed in rem and (2) if we construe their complaints that way, then they didn't properly allege subject matter jurisdiction.

In rem proceedings are actions "directed against the *res* as a fictious person."[4] *World Wide Supply OU v. Quail Cruises Ship*

---

[3] Because the Appellants' complaints do not satisfy the state long-arm statutes, we don't address whether they would satisfy the "minimum contacts" standard required by due process. *Stubbs*, 447 F.3d at 1360.

[4] There are two kinds of "in rem" proceedings, though courts often conflate them. Quasi-in-rem proceedings are actions "against a party who is not personally present in the district but whose property is present." *World Wide Supply OU*, 802 F.3d at 1260. *See also Freeman v. Alderson*, 119 U.S. 185, 187 (1886) ("There is, however, a large class of cases which are not strictly actions

*Mgmt.*, 802 F.3d 1255, 1259 (11th Cir. 2015).    There are (generally) four kinds of in rem proceedings:  admiralty, forfeiture to the government, a proceeding to settle an estate (like a bankruptcy estate or a probate estate), and title clearance.  Restatement (Second) of Judgments § 6 cmt. b.  (Am. L. Inst. 2021).  In each kind of proceeding, the property is named as the defendant.  *See, e.g.*, *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159 (11th Cir. 2011) (admiralty); *United States v. $291,828.00 In U.S. Currency*, 536 F.3d 1234 (11th Cir. 2008) (forfeiture); *In re Burke*, 146 F.3d 1313 (11th Cir. 1998) (bankruptcy).

But the Appellants didn't sue their property—they sued Kea. Both complaints name Kea and describe the defendant as Kea.  And they didn't (as is required in admiralty in rem actions) "describe with reasonable particularity the property that is the subject of the action." Fed. R. Civ. P. C(2)(b).  The only mention of in rem jurisdiction in the complaints is where they assert that "this Court holds jurisdiction *in rem* over the assets which Kea has stated its intent to enforce its putative rights."  Even though the Appellants contend in their briefs that they proceeded in rem, the faces of the complaints reveal that the Appellants sued Kea, not their own property in rem.

---

in rem, but are frequently spoken of as actions quasi in rem, because, though brought against persons, they only seek to subject certain property of those persons to the discharge of the claims asserted.").  In rem proceedings are directed at the res itself.  *World Wide Supply OU*, 802 F.3d at 1259.

Even assuming they had proceeded in rem, we'd still affirm both dismissals because the Appellants haven't asserted a form of subject matter jurisdiction. Both complaints invoke only the federal courts' diversity jurisdiction, 28 U.S.C. section 1332(a). But that section grants district courts jurisdiction over actions between "citizens of different States" or "citizens of a State and citizens or subjects of a foreign state[.]" *Id.* § 1332(a)(1)–(2). If we construe the Appellants' complaints as being in rem, then there is only property on the other side of the "v." This isn't enough to satisfy diversity jurisdiction. *See Powell v. Offshore Nav., Inc.*, 644 F.2d 1063, 1065 n.3 (5th Cir. May 1981) ("For purposes of the complete diversity requirement, discussed in greater detail below, we treat the vessel as neither diverse nor non-diverse, for its presence in the suit in no way implicates the rationale behind diversity jurisdiction, that is, the protection of out-of-state litigants against bias in state courts.").

Indeed, for in rem actions, Congress has specifically provided for in rem jurisdiction. *See, e.g., id.* §§ 1333 (admiralty); 1334 (bankruptcy); 1345 (all civil actions with United States as the plaintiff, including forfeiture). The Appellants have the duty to invoke our jurisdiction and—if we construe their complaints as being in rem—the Appellants have failed to do so. *See Fed. Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (holding that the party invoking federal jurisdiction has the burden of pleading and proving it).

## CONCLUSION

The Appellants have failed to sufficiently allege personal jurisdiction over Kea or invoke the district courts' in rem jurisdiction over the Appellants' assets.  Thus, we affirm.

**AFFIRMED.**