# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 18, 2024

Lyle W. Cayce
Clerk

No. 23-20357

———————

Ultra Deep Picasso Pte. Limited,

*Plaintiff—Appellant*,

*versus*

Dynamic Industries Saudi Arabia Limited,

*Defendant—Appellee*,

Riyad Bank,

*Garnishee—Appellee*.

———————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3891

———————

Before Jones, Clement, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

This appeal of the district court's vacatur of a maritime attachment order turns on two questions: First, does Supplemental Rule B of the Federal Rules of Civil Procedure require that attached property "be found within the district," or is it enough for the property simply to be "in the hands of . . . garnishees" over which the district court has jurisdiction? Second, when is a bank account "found within the district" for the purposes of Rule B? We

conclude that for a valid Rule B attachment, the property must be found within the district. And a bank account is located where its funds can be withdrawn. As we resolve these two questions in Appellees' favor, we affirm.

## I.

Plaintiff-Appellant Ultra Deep Picasso Pte. Limited (Ultra Deep) is a contractor that operates undersea vessels for marine construction projects. Defendant-Appellee Dynamic Industries Saudi Arabia Ltd. (Dynamic) subcontracted with Ultra Deep to perform tasks in support of a project stemming from a contract Dynamic entered with Saudi Aramco. Dynamic and Ultra Deep's agreement contains an arbitration provision covering "dispute[s] arising out of or relating to" the subcontract.

Ultra Deep alleges that after completing subsea diving support worth more than ten million dollars pursuant to the subcontract agreement, Dynamic failed to pay, in breach of the agreement. Ultra Deep filed a verified complaint against Dynamic in the Southern District of Texas, asserting causes of action for breach of contract and, to secure its claims in arbitration, for maritime attachment and garnishment of Dynamic's funds allegedly held by Garnishee-Appellee Riyad Bank.[1] *See* FED. R. CIV. P. SUPP. R. B(1)(a) (allowing claim "for process to attach the defendant's tangible or intangible personal property . . . in the hands of the garnishees").[2] The latter claim gives rise to this appeal.

---

[1] Riyad Bank is a Saudi Arabian bank with its principal office in Riyadh, Saudi Arabia. Riyad Bank has a presence in Houston, which it terms an "Agency" but "not a full-service branch bank of Riyad Bank." Riyad Bank purports to have "no connection to the underlying dispute." It asserts that it is simply the institution at which Dynamic is alleged to hold depository accounts.

[2] Supplemental Rule B(1)(a) states:

**(1)** . . . In an in personam action:

2

No. 23-20357

To effectuate its attachment claim, Ultra Deep sought and was granted an *ex parte* order for attachment of Dynamic assets "held by or at" Riyad Bank. Dynamic, in response, filed two motions to dismiss: one for lack of personal jurisdiction, improper venue, and to compel arbitration; and another for *forum non conveniens*. The magistrate judge convened a hearing on the motions, during which "the parties made clear that the true dispute was over the validity of the order of attachment." Because of this, the magistrate judge concluded that the issues presented should be addressed via a motion to vacate the attachment order and recommended that Dynamic's motions be denied. The district court accepted the recommendation and denied Dynamic's motions to dismiss.

Dynamic and Riyad Bank then obliged with a motion to vacate the attachment order, arguing that Ultra Deep "did not show that [Dynamic] had any property in [the Southern District of Texas], including any property deposited with Riyad Bank." Ultra Deep countered that "[Dynamic]'s property at Riyad Bank is within [the Southern District of Texas] because Riyad Bank, and any account it maintains worldwide, [are] located in the District for the purpose of Supplemental Rules [for Admiralty or Maritime Claims and Asset Forfeiture Actions] B and E." The magistrate judge held a hearing pursuant to Rule E(4)(f),[3] inviting both parties to introduce evidence bearing on the propriety of Ultra Deep's Rule B attachment.

---

**(a)** If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of the garnishees named in the process.

[3] Supplemental Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which

No. 23-20357

At the hearing, Riyad Bank provided documentation reflecting that its license with the Texas Department of Banking had been recently corrected to reflect that its presence in Houston constitutes a "foreign bank agency" and not a full branch of the bank. Its Houston Agency's general manager stated that the Agency only "provide[s] loans, guarantees[,] and stand-by letters of credit to U.S. and Canadian companies to facilitate business in Saudi Arabia"; it neither holds or accepts deposits of assets, nor allows clients to withdraw funds, and it cannot access accounts held by Riyad Bank in Saudi Arabia. The Agency's general manager also averred that Riyad Bank has no branches in the United States and that its only presence is the Houston Agency.

For its part, Dynamic, via an uncontroverted declaration of its general manager, stated that it has never leased, rented, or occupied property in the United States, or had employees or maintained an office here. Dynamic also asserted that it maintained no bank accounts in the United States and derived no revenue from business conducted in this country. Dynamic and Riyad Bank also proffered Riyad Bank's interrogatory responses to substantiate that there are no accounts or balances "owned or held or on behalf of [Dynamic] or its affiliated or subsidiary companies in the United States," and that the Agency neither controls nor has custody of Dynamic's property subject to the writ of garnishment. The bank's discovery responses also state that the bank has not executed in-country transfers on Dynamic's behalf and has no contracts with Dynamic in the United States.

By contrast, Ultra Deep "offered no evidence of any property found" in the Southern District of Texas. Indeed, Ultra Deep conceded that

―――――――――――――――――

the plaintiff shall be required to show why the arrest or attachment should not be vacated . . . ."

"there's no property [of Dynamic held by Riyad Bank] in this District . . . . [W]e haven't disputed that[.]" Instead, Ultra Deep contended that "jurisdiction over the Garnishee" located "in the District," i.e., by virtue of Riyad Bank's Houston Agency, satisfies Rule B.

The magistrate judge recommended granting the motion to vacate. Applying the four-part test for vacating a Rule B attachment articulated in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009), the magistrate judge rejected Ultra Deep's position, reasoning that Ultra Deep "did not meet its burden of demonstrating that [Dynamic]'s property may be found within the Southern District of Texas." Indeed, Ultra Deep "made no effort to present evidence or call witnesses at the Rule E(4)(f) hearing that would have met the evidentiary burden." The magistrate judge noted that Ultra Deep "also failed to provide apposite authority indicating that Riyad Bank's application materials to the Texas Department of Banking are germane to the analysis as to whether [Dynamic] could access its property in the District via Riyad Bank."

Over Ultra Deep's filed objections, the district court adopted the magistrate judge's recommendation and granted Dynamic and Riyad Bank's motion to vacate Ultra Deep's *ex parte* Rule B attachment order. Because the district court's "jurisdiction terminate[d] with the vacatur of the Rule B attachment," the district court then dismissed the case with prejudice. Ultra Deep now appeals, asserting that the district court erred when it "held that [Dynamic's] property was not 'in the hands' of . . . Riyad Bank."

## II.

We review the district court's order vacating the Rule B attachment and dismissing the action for an abuse of discretion, though we weigh legal

conclusions underlying the order *de novo*. *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016) (citing *Geneve Butane, Inc. v. Nat'l Oil Corp.*, 551 F. App'x 185, 185 (5th Cir. 2014)).

### III.

### A.

"Maritime attachment is a distinctive admiralty remedy that was a part of American jurisprudence at the time the Constitution was adopted." *Boland Marine & Indus., LLC v. Bouchard Transp. Co., Inc.*, No. 1:20-CV-66-LY-ML, 2020 WL 10051743, at *2 (W.D. Tex. Feb. 28, 2020) (quoting 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 21:3 (6th ed. Nov. 2019)). "*In rem* actions in admiralty generally require, as a prerequisite to a court's jurisdiction, the presence of the vessel or other *res* within the territorial confines of the court." *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 333 (5th Cir. 1978) (italics added). Rule B augments traditional *in rem* claims by providing a process for effecting *in personam* jurisdiction over an absent defendant via a maritime attachment claim. *See* 29 James W. Moore et al., Moore's Federal Practice § 705.04 (Matthew Bender 3d Ed.) ("In a *quasi in rem* action, claims are made *in personam*, rather than *in rem* against a *res*."). At essence, "Rule B allows a district court to take jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant." *Oceanografia*, 817 F.3d at 244 (citation omitted). "The rule has two purposes: to secure a respondent's appearance and to assure satisfaction in case the suit is successful." *Id.* (citation and internal quotation marks omitted).

Once a Rule B attachment order has been entered, a defendant or "any other person claiming an interest" in the property may seek release from the attachment. Fed. R. Civ. P. Supp. R. E(4)(f). And once a defendant

moves to vacate an attachment, a district court must grant the motion if the plaintiff-garnishor fails to show that it has satisfied the requirements of Rules B and E. *Boland Marine*, 2020 WL 10051743, at *2 (citation omitted). In applying Rule E(4)(f), many courts have employed the four-factor test first articulated in *Aqua Stoli* to determine whether a plaintiff has met its burden, i.e., has shown that:

> 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

*Aqua Stoli*, 460 F.3d at 445 (internal footnote omitted); *see, e.g.*, *Sikousis Legacy, Inc. v. B-Gas Ltd.*, 97 F.4th 622, 628–29 (9th Cir. 2024); *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 541 (4th Cir. 2013); *see also Peninsula Petroleum Far East Pte. Ltd. v. Crystal Cruises, LLC*, 3:22-CV-0241-L-BH, 2022 WL 17413572, at *5 (N.D. Tex. Aug. 5, 2022) (collecting cases), *report and recommendation adopted* 2022 WL 17413571 (N.D. Tex. Aug. 22, 2022); *Boland Marine*, 2020 WL 10051743, at *2. Similarly, the Eleventh Circuit has made clear that "Rule B . . . requires, as a precondition to its application, that the defendant not be present in the district, *but that the defendant's property must be present there.*" *World Wide Supply OU v. Quail Cruises Ship Mgmt.*, 802 F.3d 1255, 1262 (11th Cir. 2015) (emphasis added).

This court has not expressly endorsed *Aqua Stoli*'s four-part test. But we have discussed its first two requirements approvingly. *See K Invs., Inc. v. B-Gas Ltd.*, No. 21-40642, 2022 WL 964210, at *2 (5th Cir. Mar. 30, 2022) (per curiam) ("In order to properly invoke Rule B, a plaintiff must file a verified complaint sufficient to make a prima facie showing that (1) the plaintiff has a maritime claim against the defendant and (2) that the defendant is not present in the district.") (citing *Aqua Stoli*, 460 F.3d at 445). Today's

case centers on the third part of the *Aqua Stoli* test: whether the defendant's property must be found within the district to be attached—a requirement not expressly contained within Rule B itself.

**B.**

The issue thus framed, we must answer two questions: (1) Does Rule B require, per *Aqua Stoli*, that attached property lie within the district court's jurisdictional bounds, or is the rule satisfied if the attached property is simply "in the hands of [a] garnishee" within the court's reach, regardless of the property's location? And (2) if the former, are any Dynamic bank accounts with Riyad Bank "found" within the Southern District of Texas?

**1.**

Ultra Deep contends that the district court erred in vacating the attachment order at issue because Rule B does not require that a defendant's property actually be sited within the district where a garnishee has been served. Tracking Rule B's text, Ultra Deep posits that it is sufficient if the property is "in the hands of" a local garnishee, even if the property is outside the district. En route to this reading, Ultra Deep brushes aside *Aqua Stoli*'s within-the-district requirement by marginalizing other courts' favorable application of *Aqua Stoli* as erroneous, unthinking "copying and pasting" of the Second Circuit's test that this court should decline to follow.

We disagree with Ultra Deep's position, and its characterization of other courts' use of the *Aqua Stoli* test falls well short of persuading us otherwise. True enough, Rule B does not explicitly require what *Aqua Stoli* and similar cases say is necessary—that a garnishing plaintiff bears the burden of proving that "the defendant's property may be found within the district." *Aqua Stoli*, 460 F.3d at 445; *see also World Wide Supply*, 802 F.3d at 1262. But the requirement that property sought to be attached be located

within the attaching court's jurisdiction rests on bedrock principles of maritime jurisdiction—on which Rule B is also founded:

> When the defendant cannot be found within the district, the plaintiff may attach the defendant's goods and chattels. . . . [T]he plaintiff's claim is against the person, not the thing, but if the person cannot be found in the district, the plaintiff is protected by the ability to proceed against the thing.

*Sembawang Shipyard v. Charger, Inc.*, 955 F.2d 983, 987 (5th Cir. 1992) (internal quotation marks and citation omitted). In contrast to a true *in rem* proceeding, in which the claim is against the thing itself, *id.*; *see* FED. R. CIV. P. SUPP. R. C, Rule B delineates a *quasi in rem* procedure that "allows a district court to take jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant." *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001). And the "good-faith allegation in the complaint that the *res* is present within the geographical jurisdiction of the court is *the* jurisdictional fact which gives the court *in personam* jurisdiction over the defendant purported to own the *res*." *Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157, 159 (5th Cir. 1992).

These cases show that while "personal jurisdiction over the third person garnishee is an essential prerequisite" to a Rule B attachment action, *Boland Marine*, 2020 WL 10051743, at *8 (citation and internal quotation marks omitted), so is *in rem* jurisdiction over the property to be attached. *See Great Prize*, 967 F.2d at 159 ("An *in personam* admiralty or maritime claim is instituted by a complaint which may contain a prayer for process to attach the defendant's property *found within the district*.") (emphasis added). In other words, a proper Rule B attachment hinges on not just the attaching court's *in personam* jurisdiction over a garnishee, but also on its *in rem* jurisdiction over

9

the asset sought to be attached, i.e., that the asset be "present within the geographical jurisdiction of the court." *Id.*[4]

That a Rule B attachment is effectuated through a third-person garnishee, instead of directly against a vessel *in rem*, does not obviate the requirement that the attaching court have jurisdiction over the thing to be attached. That necessity cleanly maps onto Rule B's mechanism for making an *in personam* claim against "a defendant not found within the district." Fed. R. Civ. P. Supp. R. B(1)(a); *see Sembawang*, 955 F.2d at 983 ("Rule B is an adjunct to a claim *in personam*.") (italics added); *see also Great Prize*, 967 F.2d at 159–60 ("Attachment keeps the *res* within the jurisdiction and provides the basis for enforcement of a subsequently entered judgment."). Thus, *Aqua Stoli*'s test harmonizes Rule B and fundamental requirements of maritime *in rem* jurisdiction. *Compare Aqua Stoli*, 460 F.3d at 445, *with Great Prize*, 967 F.2d at 159.

## 2.

But how does Rule B apply to bank accounts? More specifically, how should a court ascertain whether a bank account is "found within the district," *Aqua Stoli*, 460 F.3d at 445, or "within the geographical jurisdiction of the court," *Great Prize*, 967 F.2d at 159? To determine the location of a bank account, we look to the laws of the forum state—here, Texas. Assessing this question, the district court concluded that Ultra Deep "failed to meet its burden of demonstrating that [Dynamic]'s property may

---

[4] Ultra Deep argues that, under *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 145 (2023), Texas has personal jurisdiction over Riyad Bank because Riyad Bank has an agent for service of process registered and located in Texas. Assuming Ultra Deep is correct, that only solves half of the equation. *Mallory* thus does not alter our analysis of whether Ultra Deep can attain a proper Rule B attachment of Dynamic's assets.

be found within the Southern District of Texas," such that the court could not attach the property. We agree.

By way of background, bank accounts and the funds on deposit historically had a physical situs—e.g., the brick-and-mortar bank branch where the account was opened. But "in the age of modern banking, bank accounts have grown increasingly fungible and intangible, and courts are split on where a bank account is located." *Boland Marine*, 2020 WL 10051743, at *4. Indeed, the location of a bank account is somewhat of a legal fiction; an account may have more than one situs.

The district court in *Boland Marine* squarely faced this question. That court's analysis rested on an *Erie* guess[5] that the Supreme Court of Texas would "find that bank accounts are located wherever funds are available to the account holder." *Id.* at *7; *see Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019) (noting that where the Supreme Court of Texas "has not ruled on an issue, we make an *Erie* guess" to predict how that court would decide the issue) (citation and internal quotation marks omitted). From that antecedent, the *Boland Marine* court held that, for purposes of Rule B, "accounts are 'located' wherever they are available for withdrawal by the depositor." 2020 WL 10051743, at *6. This yardstick was sensible "because modern banking has rendered [an account holder's] funds entirely intangible; rather than sitting in [a] vault, the intangible funds exist in a series of computerized sequences and in [a bank's] promise to pay [the account holder] when and where [it] asks for payment." *Id. Boland Marine*'s analysis is persuasive, and the parties have not supplied any Texas authority calling it into question.

_____

[5] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).

Ultra Deep counters that the situs analysis should be simple: "Texas law creates a legal fiction and provides that where the garnishee is, the *res* is." Ultra Deep offers two Texas district court cases applying Texas law to support its proposition that *in rem* jurisdiction is satisfied if the court has personal jurisdiction over the garnishee. *See Solgas Energy Ltd. v. Fed. Gov't of Nigeria*, No. H-09-368, 2010 WL 11679364, at \*5–6 (S.D. Tex. Feb. 9, 2010)); *Af-Cap, Inc. v. Rep. of Congo*, Nos. A-01-CA-100-SS, A-01-CA-321-SS, 2005 WL 6128154, at \*3 (W.D. Tex. Feb. 4, 2005), *aff'd in part, vacated in part*, 462 F.3d 417 (5th Cir. 2006). But these cases "are inapplicable because they are not admiralty cases and, consequently, did not apply the Rule B analysis." *Boland Marine*, 2020 WL 10051743, at \*3.

For further support, Ultra Deep offers *Day v. Temple Drilling Co.*, 613 F. Supp. 194, 196 (S.D. Miss. 1985). Closer, but still no cigar. Similar to this case, *Day* involved a dispute over whether a debt owed by the maritime garnishee was "located within the district" for Rule B(1) attachment purposes. *Id.* at 196. The *Day* court speculated that "the Fifth Circuit would hold that in *quasi in rem* actions, if the court has jurisdiction over the garnishee-defendant, it has jurisdiction over the debt." *Id.* at 196–97 (italics added). The court therefore concluded that because "it ha[d] personal jurisdiction over the garnishees/defendants, . . . it also ha[d] jurisdiction over any indebtedness owed by the garnishee/defendants[.]" *Id.* at 197.

But as discussed above, *Great Prize*—which this court decided some years after *Day*—makes clear that evidence that "the *res* is present within the geographical jurisdiction of the court is *the* jurisdictional fact which gives the court *in personam* jurisdiction over the defendant purported to own the *res*." 967 F.2d at 159. Put differently, the Rule B inquiry rests on the attaching court's jurisdiction over both the garnishee *and* the property to be attached, the latter of which hinges on *in rem* jurisdiction, and, *ergo*, the property's

location within the district. To the extent *Day* rests on a contrary rule, its holding is superseded by this court's precedent.

Additionally, as the *Boland Marine* court also recognized, "the parties have not presented—and the court has not identified—an admiralty case extending the analysis in *Day* . . . to bank accounts." 2020 WL 10051743, at *4. When presented squarely with the opportunity to do so, the *Boland Marine* court declined and instead concluded that under Texas law, for Rule B's purposes, "accounts are 'located' wherever they are available for withdrawal by the depositor." *Id.* at *6. We agree with *Boland Marine*'s pragmatic approach.

Applied here, unlike the depository bank in *Boland Marine*, Riyad Bank does not have "multiple branches" in the district, much less within the United States. Indeed, its sole presence in the United States is the Houston Agency. And as the district court recognized based on the record adduced at the Rule E(4)(f) hearing, Ultra Deep "proffered no evidence that [Dynamic] can withdraw its property through the Riyad Bank [A]gency" in the Southern District of Texas.[6] Presented with no evidence that the attached assets are

---

[6] Ultra Deep takes issue with Riyad Bank's attempts to cabin its Houston Agency's operations. For instance, Ultra Deep argues that it makes no difference whether the Houston Agency is a depository institution with ATMs, cash, and a vault because the Texas Finance Code grants Riyad Bank the *authority* to accept deposits and receive and transmit money via the Houston Agency. But even granting that the Houston Agency is authorized by Texas law to hold deposits, that does not mean that it actually does so. As the magistrate judge recognized, Ultra Deep fails to provide support for the notion that Riyad Bank's authorization to operate as a foreign bank under the Texas Finance Code "should override the undisputed evidence that its Houston Agency does not, in fact, . . . exercise that authority." And Ultra Deep has not "identified [any] authority suggesting that the Houston Agency's registration as a foreign bank branch *per se* satisfies the Rule B requirement that [Dynamic]'s property be found within th[e] District."

No. 23-20357

located within the Southern District of Texas, the district court properly vacated its initial order of attachment and dismissed Ultra Deep's claims.

## IV.

Supplemental Rule B requires that property attached pursuant to its *quasi in rem* procedure "be found within the district," *Aqua Stoli*, 460 F.3d at 445, in addition to being "in the hands of . . . garnishees" over which the attaching court has jurisdiction, FED. R. CIV. P. SUPP. R. B(1)(a). Here, Ultra Deep fails to show that any Dynamic property held by Riyad Bank is located within the geographical jurisdiction of the Southern District of Texas. Accordingly, the district court properly vacated the *ex parte* maritime attachment order it initially entered and then dismissed Ultra Deep's claims.

AFFIRMED.